U.S. COURTS

99 SEP 13 PM 1:43

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| NOEL PUENTE GOMEZ, et al., | ) | |
| | ) | Case No. CIV 91-0299-S-LMB |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | FINDINGS OF FACT, |
| | ) | CONCLUSIONS OF LAW, |
| JAMES SPALDING, et al., | ) | MEMORANDUM DECISION |
| | ) | AND ORDER RELATING TO |
| Defendants. | ) | PLAINTIFFS' MOTION FOR |
| | ) | SANCTIONS |

Currently pending before the Court is Plaintiffs' Motion for Order to Show Cause Why Deputy Attorneys General Stephanie Altig and Timothy McNeese Should Not Be Sanctioned for Professional Misconduct (Motion for Sanctions) (Docket No. 594).

Having carefully reviewed the record, and considered oral argument of counsel, the Court enters the following Findings of Fact, Conclusions of Law, Memorandum Decision and Order Relating to Plaintiffs' Motion for Sanctions.

FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM DECISION
AND ORDER RELATING TO PLAINTIFFS' MOTION FOR SANCTIONS -1

# I.

## BACKGROUND

Plaintiffs have moved the Court to sanction attorneys Stephanie Altig (Altig) and Timothy McNeese (McNeese) for conduct which allegedly violated professional and ethical standards required of them as attorneys admitted to practice before the United States District Court for the District of Idaho.  According to Plaintiffs' allegations, Altig and McNeese obtained or acquired, read and used information contained in attorney-client correspondence sent from attorney Stephen Pevar (Pevar) to members of the class of inmate plaintiffs he represented in this instant action.  Plaintiffs assert that the correspondence was clearly subject to the attorney-client privilege as well as the work product doctrine and that Altig and McNeese's receiving and retaining the documents from employees of the Idaho Department of Correction (IDOC) was inappropriate.

Plaintiffs also assert that Altig committed an ethical violation by speaking personally with and discussing matters relevant to the instant litigation with inmate Cootz, a member of the class of inmates who she knew was represented by Pevar.  The Court finds and thus concludes that this claim fails for failure of proof and will not be addressed further herein.

By way of brief summary relevant to the history of these proceedings, on October 29, 1997, Defendants filed a Motion for Order to Show Cause why Plaintiffs should not be held in contempt.  The motion was accompanied by the Affidavit of Diana K. Phillips, which attached a transcript of the December 10, 1996 hearing during which Defendants assert Pevar made fraudulent misrepresentations to the Court.  In that motion Defendants also requested leave of Court to file Pevar's letters under seal, as well as the affidavits of IDOC employees who provided Altig with copies of Pevar's letters.

Defendants assert that the correspondence Altig obtained from IDOC employees constituted evidence that Pevar had engaged in a fraud upon the Court and, therefore, any

FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM DECISION
AND ORDER RELATING TO PLAINTIFFS' MOTION FOR SANCTIONS -2

assertion of the attorney-client privilege was lost.  Further, Defendants maintain that any confidentiality had been waived or lost because the correspondence had been left in a public area of the prison law library and the inmates had failed to take reasonable precautions to ensure that IDOC employees would not have access to the correspondence. As a sanction for Pevar's alleged fraudulent misrepresentations, Defendants requested that the Court dismiss Plaintiffs' action.

On January 12, 1998, the Court denied Defendants' motion.  At that time, the Court reviewed not only the transcript of statements made by Pevar during the December 10, 1996 hearing, but also considered the procedural context in which Pevar's statements were made and the context in which relief was being sought.

In the December 10, 1996 hearing, Pevar argued that hundreds of instances of actual court access injury existed.  His correspondence to inmates, however, reveals that, while he believed hundreds of such instances existed, he had only been able to find evidence of a few cases.  It appears from a review of the record that Pevar, as counsel for Plaintiffs, based his belief that instances of actual access to court injuries existed on the depositions of IDOC employees that had previously been conducted, and the fact that there were a large number of non-English speaking Hispanic inmates housed at IDOC. Further, Pevar also argued that his ability to locate and present evidence of actual injury had been impeded by Defendants' failure to fully comply with his or the inmate law clerks' attempts to contact those who may have actually suffered access to court injuries. Accordingly, upon reviewing Pevar's statements from the transcript of the December 10, 1996 hearing in the light and context in which they were made, together with the admissions made to his inmate clients contained in the correspondence which ultimately came into the Defendants' possession, the Court, in both January 1998 and at this time, views Pevar's statements as argument of counsel, and as an optimistic characterization or interpretation of what he had learned from the depositions and interviews he had

FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM DECISION
AND ORDER RELATING TO PLAINTIFFS' MOTION FOR SANCTIONS -3

conducted.   In light of the circumstances, the Court concluded in January 1998, and still concludes at this time, that Pevar's argument did not constitute fraudulent misrepresentations of fact or a fraud which would warrant dismissing this action as requested by Defendants.

On February 18, 1999, Plaintiffs moved the Court to order Altig and McNeese to show cause why they should not be sanctioned for professional misconduct (Docket No. 594).   The Court construed Plaintiffs' motion as a request for sanctions against Altig and McNeese and scheduled the matter for an evidentiary hearing with the burden of proving professional misconduct on Plaintiffs.

In response to Plaintiffs' allegations of professional and ethical misconduct made in Plaintiffs' Motion for Sanctions now pending before the Court, Altig and McNeese assert that their conduct was reasonable, that they did not violate established professional and ethical rules, and that their conduct was actually necessary in order to comply with those rules, specifically to alert the Court that Pevar had committed a fraud.   Altig and McNeese point out that when they received the correspondence from a prison employee familiar with these proceedings, they were told by that employee that the correspondence contained evidence indicating that Pevar had made fraudulent or material misrepresentations to the Court on December 10, 1996.   As a result, Altig and McNeese maintain that they acted reasonably in receiving and reading the materials, and later seeking direction from their superiors on how to proceed within the Attorney General's Office, waiting for such guidance, and eventually following the counsel given by their superiors.

In the instant proceedings, Plaintiffs seek an order from the Court declaring that Altig and McNeese violated the inmates' and counsel's First Amendment rights, in addition to failing to comply with applicable professional and ethical responsibilities. Further, Plaintiffs seek an award of attorney fees and expenses incurred as a result of

FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM DECISION
AND ORDER RELATING TO PLAINTIFFS' MOTION FOR SANCTIONS -4

Defendants' alleged misconduct and request that this Court refer Altig and McNeese to the Disciplinary Committee of the Idaho State Bar.

On June 28, 1999, the Court commenced a three-day evidentiary hearing during which witnesses were called and evidence was presented by both parties relating to the allegations of professional and ethical violations. Counsel for the respective parties presented closing oral arguments to the Court on July 6, 1999, and subsequently submitted proposed findings of facts and conclusions of law. Accordingly, the matter has been fully submitted. After considering the evidence, applicable legal authorities and arguments of counsel, the Court now enters its decision on Plaintiffs' Motion for Sanctions.

## II.
## LEGAL PRINCIPLES

### A.   Court Authority for Imposing Sanctions for Ethical Violations

The federal district court "has the duty and responsibility of supervising the conduct of attorneys who appear before it." *Erickson v. Newmar Corp.*, 87 F.3d 298, 300 (9th Cir. 1996). As part of that responsibility, courts have broad power to impose sanctions for unethical or improper conduct. The United States Court of Appeals for the Ninth Circuit has indicated:

> Whenever an allegation is made that an attorney has violated his moral and ethical responsibility, an important question of professional ethics is raised. It is the duty of the district court to examine the charge, since it is that court which is authorized to supervise the conduct of the members of its bar. The courts, as well as the bar, have a responsibility to maintain public confidence in the legal profession.

*Gas-A-Tron of Arizona v. Union Oil Co. of California*, 534 F.2d 1322, 1324-25 (9th Cir. 1976) (quoting *Richardson v. Hamilton Int'l Corp.*, 469 F.2d 1382, 1385-86 (3rd Cir.

FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM DECISION
AND ORDER RELATING TO PLAINTIFFS' MOTION FOR SANCTIONS -5

1972)).  "Where ... the conduct giving rise to the imposition of sanctions occurred outside the presence of the court, counsel should be provided an opportunity to explain his [or her] conduct."  *United States v. Blodgett*, 709 F.2d 608, 610 (9th Cir. 1983).

The power to impose sanctions upon attorneys appearing before a court is derived from several sources: federal statute, local rules, and the court's inherent power.  "For a sanction to be validly imposed, the conduct in question must be sanctionable under the authority relied on."  *Cunningham v. County of Los Angeles*, 879 F.2d 481, 490 (9th Cir. 1988) (internal quotations omitted).  Federal judges have "an arsenal of sanctions they can impose for unethical behavior.  These sanctions include monetary sanctions, contempt, and disqualification of counsel."  *Erickson*, 87 F.3d at 301.

District of Idaho Local Civil Rule 83.5 provides:

> All members of the bar of this court and all attorneys permitted to practice in this court shall familiarize themselves with and comply with the standards of professional conduct required of members of the Idaho State Bar and decisions of any court applicable thereto which are hereby adopted as standards of professional conduct of this court.  These provisions shall not be interpreted to be exhaustive of the standards of professional conduct.  In that connection, the Idaho Rules of Professional Conduct for the Idaho State Bar should be noted.  No attorney permitted to practice before this court shall engage in any conduct which degrades or impugns the integrity of the court or in any manner interferes with the administration of justice therein.
> ....
> In the event any attorney engages in conduct which may warrant discipline or other sanctions, the court or any district judge may, in addition to ... imposing ... appropriate sanctions pursuant to the court's inherent powers or the Fed. R. Civ. P., refer the matter to the disciplinary body of any court before which the attorney has been admitted to practice.

D. Id. L. Civ. R. 83.5(a)-(b).  Accordingly, the Local Rules provide that a court may refer

FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM DECISION
AND ORDER RELATING TO PLAINTIFFS' MOTION FOR SANCTIONS -6

to standards of professional conduct imposed upon members of the Idaho State Bar in the process of determining whether such standards have been violated and to decide whether an attorney should be sanctioned for his or her conduct or behavior.

On November 1, 1986, by order of the Supreme Court of Idaho, the Idaho Rules of Professional Conduct became effective and binding upon all members of the Idaho State Bar. The Rules of Conduct provide that an attorney shall not communicate with a party the attorney knows to be represented by counsel about the subject matter of such representation, while representing a client an attorney shall respect the rights of third persons, and an attorney shall make reasonable efforts to ensure that the rules of professional conduct are complied with when supervising a subordinate lawyer. I.R.P.C. §§ 4.2; 4.4; 5.1(b), (c). In addition to supervising the conduct of a subordinate lawyer, the Rules of Conduct require an attorney to make reasonable efforts to ensure that the conduct of a non-lawyer assistant is compatible with professional obligations imposed upon the attorney. I.R.P.C. § 5.3. Finally, the Rules of Conduct provide that actions of a lawyer which are prejudicial to the administration of justice are improper and constitute professional misconduct. I.R.P.C. § 8.4(d).

The statutory basis for the Court imposing sanctions upon an attorney who engages in unprofessional conduct is 28 U.S.C. § 1927, which provides in pertinent part:

> Any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. The Ninth Circuit has also held that the "imposition of costs and fees under § 1927 may be made only on a finding that the attorney acted 'recklessly or in bad faith.'" *T.W. Elec. Serv., Inc. v. Pacific Elec. Cont. Assn.*, 809 F.2d 626, 638 (9th Cir. 1987) (quoting *U.S. v. Associated Convalescent Ent.*, 766 F.2d 1342, 1346 (9th Cir. 1985)); *Estate of Blas v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986); *Barnd v. City of*

*Tacoma*, 664 F.2d 1339, 1343 (9th Cir. 1982).

In addition to the statutory power to impose sanctions for attorney misconduct, the power to sanction is also held by a court pursuant to its inherent authority. The United States Supreme Court has declared that "[t]he inherent powers of federal courts are those which 'are necessary to the exercise of all others,' [and that b]ecause inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) (internal quotation omitted). "While recklessness may be the standard under § 1927, ... it is an insufficient basis for sanctions under a court's inherent power. Instead, counsel's conduct must constitute[ ] or [be] tantamount to bad faith." *Keegan Management Co., Sec. Litig. v. Keegan Management Co.*, 78 F.3d 431, 436 (9th Cir. 1996) (quoting *Piper*, 447 U.S. at 767, 100 S.Ct. at 2465). As a result, "[i]n sanctioning counsel, 'courts may not invoke inherent powers without a 'specific finding of bad faith.'" *Keegan Management Co.*, 78 F.3d at 437 (quoting *Yagman v. Republic Ins.*, 987 F.2d 622, 628 (9th Cir. 1993) (quoting *United States v. Stoneberger*, 805 F.2d 1391, 1393 (9th Cir. 1986)). In this regard, "[a] finding of bad faith 'does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or *mala fides*, the assertion of a colorable claim will not bar assessment of attorneys' fees.'" *Mark Ind., Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730, 732 (9th Cir. 1995) (quoting *Lipsig v. National Student Marketing Corp.*, 663 F.2d 178, 181 (D.C. Cir. 1980)).

Accordingly, when a finding of bad faith has been made, "[a] trial court's inherent powers unquestionably include the power to assess attorney's fees against any counsel who willfully abuses judicial process or otherwise conducts litigation in bad faith." *Barnd*, 665 F.2d at 1342. The Ninth Circuit has recognized that "[a]ssessment of attorney's fees and other costs in this instance would serve to protect the trial court's

FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM DECISION
AND ORDER RELATING TO PLAINTIFFS' MOTION FOR SANCTIONS -8

control of the trial process by deterring similar conduct in the future, ... and would promote the just, speedy, and inexpensive determination of actions consistent with Fed. R. Civ. P. 1." *Id.*

### B.   Attorney-Client Privilege and Waiver of the Privilege

Whether the sanctions as requested by Plaintiffs are appropriate will depend, in large part, upon whether the correspondence sent by Pevar to members of the class of inmate plaintiffs involved in this instant action consisted of privileged documents intended to be confidential professional communications.  The Federal Rules of Evidence provide:

> [T]he privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.  However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Fed. R. Evid. 501.

Under federal law, the attorney-client privilege has been recognized as "the oldest of the privileges for confidential communications known to the common law."  *UpJohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981).  "Although the underlying rationale for the privilege has changed over time, ... courts long have viewed its central concern as one 'to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'" *United States v. Zolin*, 491 U.S. 554, 562, 109 S.Ct. 2619, 2625-26, 105 L.Ed.2d 469 (1989) (quoting *UpJohn*, 449 U.S. at 289, 101 S.Ct. at 682).  "That purpose, of course, requires that clients be free to make full disclosure to their attorneys' of past wrongdoings, ... in order that the client may obtain

the aid of persons having knowledge of the law and skilled in its practice." *Zolin*, 491
U.S. at 562, 101 S.Ct. at 2626 (quoting *Fisher v. United States*, 425 U.S. 391, 403, 96
S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976); *Hunt v. Blackburn*, 128 U.S. 464, 470, 9 S.Ct.
125, 127, 32 L.Ed. 488 (1888)).

"The attorney-client privilege protects confidential disclosures made by a client to
an attorney in order to obtain legal advice, ... as well as an attorney's advice in response
to such disclosures." *In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir.
1992). The proponent of the attorney-client privilege has the burden to establish its
applicability to the communications at issue. *United States v. Landof*, 591 F.2d 36, 38
(9th Cir. 1978). The eight essential elements of the attorney-client privilege are:

> Where legal advice of any kind is sought ... from a
> professional legal advisor in his capacity as such, ... the
> communications relating to that purpose, ... made in
> confidence ... by the client, ... are at his instance permanently
> protected ... from disclosure by himself or by the legal
> advisor... unless the protection be waived.

*In re Grand Jury Investigation*, 974 F.2d at 1071 n.2 (quoting *In re Fischel*, 557 F.2d
209, 211 (9th Cir. 1977)).

With respect to whether the protections of the attorney-client privilege are waived
as a result of the disclosure of the privileged communications, the Ninth Circuit has
indicated that "the circumstances surrounding the disclosure are to be considered."
*United States v. de la Jara*, 973 F.2d 746, 749 (9th Cir. 1992). In this context, the Ninth
Circuit has "held that the attorney-client privilege may be waived by implication, even
when the disclosure of the privileged material was 'inadvertent' or involuntary." *Id.* at
749-50. However, when the disclosure of privileged material has occurred on an
involuntary basis, the privilege will be "preserved if the privilege holder has made efforts
'reasonably designed' to protect and preserve the privilege. Conversely, ... the privilege
[will be deemed] to be waived if the privilege holder fails to pursue all reasonable means

FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM DECISION
AND ORDER RELATING TO PLAINTIFFS' MOTION FOR SANCTIONS -10

of preserving the confidentiality of the privileged matter." *Id.* at 750.

Inasmuch as the attorney-client privilege effectively prevents the full disclosure of relevant information from the ultimate factfinder, it should be applied "only where necessary to achieve its purpose." *Fisher*, 425 U.S. at 403, 96 S.Ct. at 1577. As a result, while the privilege must ensure that confidences between client and attorney are protected from disclosure, "the reason for that protection – the centrality of open client and attorney communication to the proper functioning of our adversary system of justice – 'ceases to operate at a certain point, namely, where the desired advice refers not to prior wrongdoing, but to future wrongdoing.'" *Zolin*, 491 U.S. at 562-63, 109 S.Ct. at 2625 (quoting 8 J. WIGMORE, EVIDENCE § 2298, p. 573). Accordingly, "[i]t is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the 'seal of secrecy,' between lawyer and client does not extend to communications 'made for the purpose of getting advice for the commission of a fraud' or crime." *Zolin*, 491 U.S. at 563, 109 S.Ct. at 2626 (quotation omitted).

## C.    The Attorney Work Product Doctrine

While the attorney-client privilege protects confidential communications between client and attorney from disclosure, "the memoranda, statements and mental impressions" prepared by the attorney in anticipation of litigation fall outside the scope of the privilege. *Hickman v. Taylor*, 329 U.S. 495, 508, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947). Although the Supreme Court has indicated that "written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties" are not privileged or irrelevant for discovery purposes, "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Id.* at 509-10, 67 S.Ct. at 393. In this regard, the Supreme Court has observed that

> [p]roper preparation of a client's case demands that he
> assemble information, sift what he considers to be the relevant

FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM DECISION
AND ORDER RELATING TO PLAINTIFFS' MOTION FOR SANCTIONS -11

> from the irrelevant facts, prepare his legal theories and plan
> his strategy without undue and needless interference.  That is
> the historical and the necessary way in which lawyers act
> within the framework of our system of jurisprudence to
> promote justice and to protect their clients' interests.  This
> work is reflected, or course, in interviews, statements,
> memoranda, correspondence, briefs, mental impressions,
> personal beliefs, and countless other tangible and intangible
> ways – aptly though roughly termed ... as the "Work product
> of the lawyer."  Were such materials open to opposing
> counsel in mere demand, much of what is now put down in
> writing would remain unwritten.  An attorney's thoughts,
> heretofore inviolate, would not be his own.  Inefficiency,
> unfairness and sharp practices would inevitably develop in the
> giving of legal advice and in the preparation of cases for trial.
> The effect on the legal profession would be demoralizing.
> And the interests of the clients and the cause of justice would
> be poorly served.

*Id.* at 510-11, 67 S.Ct. at 393-94.  "[T]he general policy against invading the privacy of

an attorney's course of preparation is so well recognized and so essential to an orderly

working of our system of legal procedure that a burden rests on the one who would

invade that privacy to establish adequate reasons to justify the production through a

subpoena or court order." *Id.* at 512, 67 S.Ct. at 394.  In this context, Federal Rule of

Civil Procedure 26 provides:

> [A] party may obtain discovery of documents and tangible
> things otherwise discoverable ... and prepared in anticipation
> of litigation or for trial by or for another party or by or for that
> other party's representative ... only upon a showing that the
> party seeking discovery has substantial need of the materials
> in the preparation of the party's case and that the party is
> unable without undue hardship to obtain the substantial
> equivalent of the materials by other means.  In ordering
> discovery of such materials when the required showing has
> been made, the court shall protect against disclosure of the
> mental impressions, conclusions, opinions, or legal theories of

FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM DECISION
AND ORDER RELATING TO PLAINTIFFS' MOTION FOR SANCTIONS -12

> an attorney or other representative of a party concerning the litigation.

Fed. R. Civ. P. 26(b)(3).

### D.   Formal Opinions of the Standing Committee on Ethics and Professional Responsibility

The Model Rules of Professional Conduct are

> not law but rather merely a suggested body of ethical principles and rules upon which reasonable lawyers, concerned about the proper role of the legal profession in American society, have reached a consensus. Since "advance notice is essential to the rule of law" and since "it is desirable that an attorney or client be aware of what actions will not be countenanced," ... the provisions of the Model Code, standing alone, present no just basis for disqualification of a lawyer. Until the Model Code is adopted as law by the courts, the legislature, or the regulatory authority charged with the discipline of lawyers in a particular jurisdiction, the canons and disciplinary rules of the Model Code are merely hortatory, not proscriptive.

*Paul E. Iacono Structural Eng'r, Inc. v. Humphrey*, 722 F.2d 435, 438 (9th Cir. 1983). The American Bar Association, Standing Committee on Ethics and Professional Responsibility (Committee) issues formal opinions relating to standards of professional conduct and ethics. On November 10, 1992, the Committee issued a formal opinion, based upon the Model Rules of Professional Conduct, relating to the inadvertent disclosure of confidential materials. The Opinion provides:

> A lawyer who receives materials that on their face appear to be subject to the attorney-client privilege or otherwise confidential, under circumstances where it is clear that they were not intended for the receiving lawyer, should refrain from examining the materials, notify the sending lawyer and abide the instructions of the lawyer who sent them.

Evidentiary Hearing Exhibit Oths -1, p. 1. On July 5, 1994, the Committee issued a

FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM DECISION
AND ORDER RELATING TO PLAINTIFFS' MOTION FOR SANCTIONS -13

Formal Opinion regarding the Unsolicited Receipt of Privileged or Confidential

Materials.  The Committee states:

> A lawyer who receives on an unauthorized basis materials of
> an adverse party that she knows to be privileged or
> confidential should upon recognizing the privileged or
> confidential nature of the materials, either refrain from
> reviewing such materials or review them only to the extent
> required to determine how appropriately to proceed; she
> should notify her adversary's lawyer that she has such
> materials and should either follow instructions of the
> adversary's lawyer with respect to the disposition of the
> materials, or refrain from using the materials until a definitive
> resolution of the proper disposition of the materials is
> obtained from a court.

Evidentiary Hearing Exhibit Oths -2, p. 1.

With all of the foregoing legal authorities and principles as guides, the Court has

reviewed the evidence contained in the record and enters the following Findings of Facts

and Conclusions of Law.

## III.

## FINDINGS OF FACT

Having carefully considered the testimony of the witnesses called at the evidentiary

hearing conducted by this Court, having thoroughly reviewed the exhibits admitted into

evidence, and having considered controlling legal authority and arguments of counsel, the

Court makes the following Findings of Fact and Conclusions of Law pursuant to Federal

Rule of Civil Procedure 52(a).

To the extent the Court has concluded that the evidence in the record does not

support certain assertions, allegations or claims made by Plaintiffs, they will not be

included in the Court's Findings of Fact or otherwise referenced herein.  In the event

those allegations of professional misconduct which were raised at the hearing are not

contained in these Findings of Fact, it is not an oversight or unintentional omission. Rather, the failure to mention an act, event or series of events in these Findings is an indication that the evidence does not support a finding and conclusion in favor of Plaintiffs' Motion for Sanctions. The Court's Findings of Fact are as follows:

1. In February 1997, Altig was lead counsel for the Idaho Department of Correction (IDOC) in this instant action. Although McNeese was also assigned to the litigation group and acted as co-counsel, he also acted as Altig's supervising attorney.

2. On February 17, 1997, Altig received from an IDOC employee a copy of a December 26, 1996 letter Pevar had sent to nine inmates housed at IDOC facilities which a prison employee found lying face-up on the law library desk of an inmate law librarian. While there is a dispute as to whether Pevar represented all of the addressees on that letter, this is the first of Pevar's correspondence to inmates received by Altig. Altig read the correspondence which contained a summary of Pevar's analysis of the strengths of some of Plaintiffs' claims, settlement prospects and prospects for recovery at trial. At the time Altig read Pevar's correspondence, this instant action was pending and the parties were conducting ongoing settlement negotiations. Altig felt the letter may have some significance to this litigation at some point in the future and placed it in her desk in-box where it remained for approximately eight months without notifying opposing counsel or the Court.

3. On June 4, 1997, an IDOC employee contacted Altig to inform her that he had reviewed or scanned letters sent by Pevar to inmates housed at IDOC facilities which contained statements which lead him to believe that Pevar had made fraudulent representations to this Court during the December 10,

FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM DECISION
AND ORDER RELATING TO PLAINTIFFS' MOTION FOR SANCTIONS -15

1996 hearing.  The statements in the correspondence related to the issue of actual injuries resulting from IDOC's alleged failure to provide constitutionally required access to the courts.   The employee became aware of the existence of two three-ring binders and their contents when an inmate law clerk employed in the prison law library requested permission from the IDOC supervisor to take the binders to his cell for review.

4.     Until January 1998, the IDOC operated prison law libraries staffed with inmate law clerks.  Pevar relied upon inmate law clerks to assist him in communicating with other members of the class of inmate plaintiffs, as well as to provide assistance in gathering factual information in support of the allegations raised in Plaintiffs' Complaint.  Turnover of inmate law clerks was high and in order for the inmate law clerks to provide Pevar with the assistance he sought, outgoing inmate law clerks informed incoming law clerks of the current status and history of the litigation.  In order to ensure that incoming law clerks were informed of the status and history of the instant action, the three-ring binders were compiled and filled with applicable orders, memoranda submitted by the respective parties, and the correspondence from inmates' counsel, which is at issue here.

5.     Altig instructed the IDOC employee to photocopy Pevar's letters and on June 5, 1997, he delivered copies of Pevar's correspondence to Altig.  Altig read the letters and, after reading the correspondence, informed her supervisor McNeese of the letters and he also read portions of the letters.  After reading Pevar's correspondence, Altig and McNeese reported these events and provided the documents to their supervisors in the Idaho Attorney General's Office.

6.     Neither Altig nor McNeese ever instructed IDOC employees to search for

these types of communications and bring them to their attention.  On the other hand, neither Altig nor McNeese discouraged or directed IDOC employees to refrain from examining the three-ring binders to review additional correspondence from Pevar to the inmates.  Similarly, McNeese did not direct Altig to refrain from receiving or reading any additional correspondence in the event that such documents were provided to her in the future.

7.     Thereafter, between June 6, 1997 and October 29, 1997, Altig received from IDOC employees a total of ten (10) additional copies of Pevar's correspondence and/or documents.  As had been done previously, these documents were copied by an IDOC employee and given to Altig whereupon she read them.

8.     Although the three-ring binders which contained the documents in question were placed on a shelf in the prison law library, the inmates could not have done anything more to secure the confidentiality of these documents because there are no areas in the prison that are accessible only to inmates. Every place in the prison is, and must be, subject to search at any time for security purposes.  The only protection of the attorney-client privilege in the prison context is that the IDOC guards and prison employees exercise integrity and refrain from reading any confidential letters from inmates and their respective legal counsel.

9.     Despite the unique circumstances presented in the prison context, reasonable prison policies providing precautions were in place at the time in question and were intended to protect and preserve the attorney-client privilege and the confidential nature of correspondence between inmates and their legal counsel.

FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM DECISION
AND ORDER RELATING TO PLAINTIFFS' MOTION FOR SANCTIONS -17

10. Neither Pevar nor the inmates to whom the letters were addressed were aware of or were informed that IDOC employees had examined, read, copied and delivered the correspondence to opposing counsel.

11. Other than the correspondence delivered on February 17, 1997, the majority of documents in question were received in early June 1997, however, Altig and McNeese did not submit the documents to this Court for review until October 29, 1997. During that several month period, the documents were reviewed by not only Altig and McNeese, but also by IDOC representatives and an unknown number of senior supervising attorneys at the Idaho Attorney General's Office.

12. Unnecessary litigation was created by the series of events of secretly acquiring, reading, retaining, sharing information with representatives of their client (the IDOC), and using the information for potential tactical advantage instead of promptly notifying opposing counsel and/or submitting the documents to the Court so the Court could determine whether the documents were confidential communications and, if so, whether the documents had lost their element of confidentiality as a result of waiver, neglect or purposeful conduct.

## IV.

### CONCLUSIONS OF LAW

To the extent any findings of fact are deemed to be conclusions of law, they are incorporated by reference into these conclusions of law. After reviewing the record and applying controlling legal standards as well as the findings of fact made after the consideration of the evidence, the Court makes the following conclusions of law:

1. The documents delivered to Altig by IDOC personnel were not only

confidential, but were also protected by the attorney-client privilege.

2. Altig and McNeese's review of the correspondence breached the attorney-client privilege which applied to the correspondence and compromised the confidential nature of the communications.

3. Altig and McNeese's actions in breaching the attorney-client privilege and confidential nature of the documents prior to submitting the documents to the Court for independent review constituted a complete disregard of the attorney-client privilege and the confidential relationships that arise as a result of legal representation.

4. Altig and McNeese each had an individual ethical and professional duty to immediately seal and submit to the Court both the initial correspondence and the correspondence subsequently received from IDOC personnel as soon as they became aware that the correspondence involved confidential communications between Pevar and the inmate plaintiffs. By failing to do so, both Altig and McNeese violated their individual ethical and professional obligations imposed upon them as attorneys admitted to practice before this Court.

5. Altig and McNeese's reporting of the documents to their superiors did not absolve their individual ethical and professional responsibility to immediately seal and submit the documents to the Court, nor did it absolve their individual ethical and professional obligation to refrain from subsequently receiving and reviewing any additional confidential communications from IDOC personnel.

6. McNeese failed to properly supervise his subordinate attorney Altig when he failed to instruct her to refrain from receiving or reading any further documents in the future. McNeese's failure to warn or caution Altig against

reading any additional submissions of inmate legal mail from counsel prior to seeking a determination by the Court constituted an improper abandonment and neglect of his duties as Altig's supervising attorney.

7.   By failing to instruct IDOC personnel to refrain from searching for, reading, copying or delivering additional confidential attorney-client correspondence or documents, Altig and McNeese implicitly authorized and encouraged IDOC personnel to secretly search for, inspect, examine, read, copy and then deliver additional confidential attorney-client correspondence or documents to Altig over a period of several months.

8.   While the receipt and review by Altig of the initial letters from Pevar might be justified as an honest one-time mistake, the on-going continuous receipt and review of additional confidential attorney-client correspondence by Altig and McNeese manifests an attitude of complete disregard for the judicial process. Altig and McNeese's implicit encouragement of IDOC personnel to continue to examine, copy and deliver future confidential communications by continuing to receive the documents over a period of several months constitutes a violation of Altig and McNeese's ethical and professional obligations imposed upon them as attorneys admitted to practice before this Court.

9.   The several month delay in notifying opposing counsel and presenting the documents to the Court to determine whether the privilege remained intact or whether confidentiality had been waived constitutes an additional failure to comply with professional obligations imposed upon Altig and McNeese.

10.  The attorney-client privilege which attached to the documents in question was not waived, either expressly or by implication, simply by the fact that the documents were contained in two separate three-ring binders located on

a shelf in the prison law library.   The inmate plaintiffs took the only reasonable means possible to preserve the confidentiality of the documents in question.  Whether the documents were stored in a locked storage room as suggested by Altig and McNeese, or on the shelf of the prison law library, IDOC employees would have ultimately discovered them in the same manner as they were originally discovered when an inmate asked permission to take the binders to his cell to review.  That event initiated the IDOC employee's review of the binders.  The IDOC employee's review of the binders would have occurred irrespective of whether the binders were stored on the shelf in the prison law library or in a locked storage room which would appropriately be subject to search by prison authorities at all times.

11.    The crime-fraud exception to the attorney-client privilege does not apply to the instant circumstances.  The crime-fraud exception only applies to communications made for the purpose of obtaining advice on an ongoing or intended future criminal activity. *United States v. Chen*, 99 F.3d 1495, 1500, 1503 (9th Cir. 1996).   As the Court ruled in its January 12, 1998 Memorandum Decision and Order, Pevar's argument and communications in question at the December 10, 1996 hearing do not constitute intentional fraudulent misrepresentations of fact or a fraud upon the Court.

12.    As explained in the January 12, 1998 Memorandum Decision and Order, in light of the procedural context in which Pevar's comments to his clients were made, the Court concluded then, and is of the same opinion now, that the comments made were little more than an optimistic characterization and argument of what Pevar had learned from the depositions and interviews he had conducted.  Because the communications in question do not relate to

FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM DECISION
AND ORDER RELATING TO PLAINTIFFS' MOTION FOR SANCTIONS -21

any ongoing or intended future criminal activity, the crime-fraud exception is inapplicable here.

13.   The case of *Farr v. Mischler*, 129 Idaho 201, 923 P.2d 446 (1996), relied upon by the Defendants, is not applicable.  *Farr* involved a letter written to plaintiff's attorney by plaintiff that was stored in corporate files.  The corporate files were sold to the defendants as an asset of the corporation prior to the litigation which commenced between the parties.  The Court in *Farr* concluded that the letter was not privileged communication because, by transferring the letter along with the corporate files, plaintiff "did not act in a manner indicating that the communication was to be confidential."  129 Idaho at 206, 923 P.2d at 451.

14.   The circumstances in *Farr* are not at all similar to and are clearly distinguishable from the circumstances in the present case.  Unlike the plaintiff in *Farr*, Pevar's letters were on his office letterhead and were sent to the inmate plaintiffs with the clear intention that they would be confidential and would not be disclosed to third persons.  The letters contained discussions about litigation strategies, Pevar's mental impressions and opinions about the legal theories in the case and, in one letter specifically, Pevar informed the inmate recipient that the letter was "for your eyes only."

15.   As explained with regard to the issue of waiver, the fact that the correspondence in question was contained in three-ring binders on the shelf of the prison law library does not lead the Court to conclude that the inmate plaintiffs acted in a manner indicating that the communications were not meant to be confidential.  As a practical matter, there was no place in the prison the inmates could store the documents to secure their confidentiality.

The only way to preserve their confidentiality, and thus protect the attorney-client privilege which attached to the documents, was for IDOC personnel to respect the attorney-client privilege and exercise integrity by refraining from reading any correspondence between inmates and their legal counsel as provided in prison policies. Because control over whether such documents would be kept confidential rests solely with IDOC personnel, it can hardly be said that the inmate plaintiffs acted in a manner which failed to preserve the confidentiality of the documents.

16. The attorney work product doctrine is also inapplicable to the present action. The attorney work product doctrine only provides protection against discovery requests and discovery requests are not at issue in this matter.

17. Altig and McNeese's conduct in breaching the attorney-client privilege, as well as compromising the confidential communications flowing from the legal representatives in this instant action, constituted bad faith conduct and warrants imposition of sanctions.

18. As a result of the unnecessary litigation created by these events, Plaintiffs shall be awarded a reasonable attorneys fee incurred as a result of bringing their Motion for Sanctions.

## V.

### CONCLUSION

This Court has been asked to sanction attorneys for misconduct occurring during the course of this instant action. The request has not been taken lightly. Rather, the Court has viewed the accusation of improper conduct as a serious concern meriting thoughtful and careful judicial deliberation. In making its decision, the Court recognizes that the fundamental, time-honored principle that communications made between an

FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM DECISION
AND ORDER RELATING TO PLAINTIFFS' MOTION FOR SANCTIONS -23

attorney and his or her client in the course of litigation are to be carefully guarded and protected.  This principle is among the oldest and most important of our common law principles and may only be breached or waived under certain conditions.  The Court concludes that Altig and McNeese breached the time-honored principle established in the attorney-client privilege and, as a result, sanctions must be imposed.  While the Court has reached its decision to impose sanctions cautiously, it is important to make it clear that it has done so in order to preserve fundamental principles of our legal system, and to maintain public confidence in the legal profession.

The Court is mindful of the tension existing between the compelling need for security in the prison which allows inmate mail to be reviewed, and the competing need to preserve the attorney-client privilege in correspondence between counsel and inmates.  Notwithstanding this tension, the Court believes both needs could have been accomplished by the prison employees exercising integrity when they came across an attorney-client communication  by simply complying with prison policies that were in place at the time these documents were discovered.

Further, if the justification for receiving and retaining possession of the correspondence by Altig and McNeese for many months after accepting delivery of the documents was to advise the Court of Pevar's alleged fraud in the December 10, 1996 hearing, that purpose could have been accomplished by counsel not reading the materials upon delivery or, if the documents were read, by immediately notifying opposing counsel of their receipt and by promptly delivering the documents in question to the Court for an *in camera* review.  In this manner, the continuous receipt of these confidential items of correspondence over a period of several months could have been avoided.

While granting Plaintiffs' Motion for Sanctions is warranted under the circumstances, the Court does not feel it is necessary or appropriate, nor is it the role of the Court under these circumstances, to refer this matter to the Idaho State Bar or to

FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM DECISION
AND ORDER RELATING TO PLAINTIFFS' MOTION FOR SANCTIONS -24

declare that the inmates' and their counsel's First Amendment rights have been violated. In light of the circumstances presented here, the Court concludes that it is not necessary to take any further action beyond that provided in order to preserve the time-honored principles involved or to maintain public trust and confidence in the legal profession. Important to the Court is that this matter arose during the course of this litigation and can and should be addressed and resolved within these proceedings by the imposition of a monetary sanction.

## VI.

## ORDER

Based on the foregoing, IT IS HEREBY ORDERED:

1.      To the extent set forth herein, Plaintiffs' Motion for Sanctions (Docket No. 594) is GRANTED and Plaintiffs are entitled to an award of attorney fees in the amount of $3,500.00, and costs and expenses in the amount of $1,000.00, for a total sanction award of $4,500.00.

2.      Plaintiffs' motion is DENIED to the extent Plaintiffs seek an order referring this matter to the Idaho State Bar or a determination that First Amendment rights have been violated.

SO ORDERED this 13th day of September, 1999.

_____
LARRY M. BOYLE
UNITED STATES MAGISTRATE JUDGE

FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM DECISION
AND ORDER RELATING TO PLAINTIFFS' MOTION FOR SANCTIONS -25

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the attached document was mailed to the following named persons:

Stephen L. Pevar, Esq.
1888 Sherman Street, Suite 380
Denver, Colorado   80203

Howard A. Belodoff, Esq.
Box 913
Boise, ID 83701

Paul R. Panther, Esq.
Deputy Attorney General
Statehouse Mail
Boise, ID 83702

Chas. F. McDevitt, Esq.
Box 2564-83701
Boise, ID 83702

Rex Blackburn, Esq.
Box 959
Boise, ID 83701

Margaret Winter, Esq.
ACLU National Prison Project
1875 Connecticut Ave NW #410
Washington, DC 20009

Dated:  9|13|99            CAMERON S. BURKE, CLERK


By _____
Deputy Clerk