## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NOEL PUENTE GOMEZ, JUAN SANCHEZ, DAN ELLIOT, LEE MAZUR HAYS, BOB JONES, ALFREDO ROMAN, PATRICK HALL, MARQ BARTLETT, GREGORY JOSEPH NELSON, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> BRENT D. REINKE, DAVE PASKETT, LARRY WRIGHT, JAMES C. SPALDING, JOE KLAUSER, ALAN LEE BRANDT, <br><br> Defendants. | Case No. CV91-299-S-LMB <br><br> **MEMORANDUM DECISION AND ORDER RE: ATTORNEY'S FEES AND COSTS** |

Pending before the Court in this case are Plaintiffs' Renewed Motion for Attorneys' Fees and Expenses (Docket No. 821), Plaintiffs' Renewed Motion for Costs (Docket No. 827), and Defendants' Second Renewed Motion to Allow Costs (Docket No. 826). The Court heard oral argument on the pending motions on March 19, 2008. Having considered the oral argument and written submissions of the parties, the Court enters the following Memorandum Decision and Order granting in part and denying in part the pending motions.

# I.

## INTRODUCTION AND PRELIMINARY ISSUES

Over 800 pleadings and papers have been docketed in this seventeen-year-old case. As might be expected, the factual and procedural history of the case is lengthy, but it is important to the issues pending before the Court. Rather than including the full history in the body of this Order, a detailed chronology of relevant events is attached as Appendix A. Therefore, only an abbreviated set of details is included in this Order when necessary. In addition, the opinion of the Ninth Circuit Court of Appeals affirming the Court's decision in this case is included as Appendix B, and the Ninth Circuit's order on attorney's fees and costs on appeal is attached as Appendix C.

In February 1989, American Civil Liberties Union (ACLU) Attorney Stephen Pevar ("Mr. Pevar") of Washington, D.C., received a letter from several inmates incarcerated in the Idaho Department of Correction ("IDOC") system that alleged various constitutional violations at the prison. Mr. Pevar began an investigation. In June 1991, Mr. Pevar and Idaho Legal Aid Services Attorney Howard Beladoff ("Mr. Beladoff") filed the Complaint in the instant case, *Gomez v. Vernon.* It contained an inmate access to court claim and an equal protection claim. In September 1992, the parties stipulated to class certification, with the class consisting of "all present and future inmates of the Idaho State Correctional Institution and the Idaho Maximum Security Institution, both present and future, during the time of their incarceration in those institutions." *Stipulation for Class Certification* (Docket No. 22).

In June 1996, the United States Supreme Court issued its landmark decision, *Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174 (1996), which changed the law governing prisoner access to

MEMORANDUM DECISION AND ORDER RE: ATTORNEY'S FEES AND COSTS - 2

court claims, requiring that a plaintiff allege facts showing an actual injury resulting from denial of access. As a result of *Lewis v. Casey*, the IDOC re-evaluated and made plans to change its access to court system.

In August 1997, National Prison Project (NPP) attorneys first entered this case on behalf of Plaintiffs. In time, several NPP attorneys worked on the case: Donna Lee, Elizabeth Alexander, Eric Balaban, Jennie Pittman, Marjorie Rifkin, and Margaret "Peggy" Winter (hereafter collectively "NPP attorneys").

In December 1997, Plaintiffs sought to amend their Complaint to add a retaliation claim when it appeared that the majority of the access to court claims did not meet the new standard of law. In January 1998, the prison adopted a new access to courts program, consisting of various fill-in-the-blank legal forms administered by IDOC-employee paralegals. Consequently, Plaintiffs filed a motion to bifurcate this case to allow the retaliation claim to proceed to trial but to hold the access to court claims in abeyance pending investigation of the legal ramifications of the new program.

On October 29, 1997, an attorney misconduct issue arose that eventually became the unfortunate focus of this case. On that date, Idaho Deputy Attorneys General representing Defendants filed a Motion to Order to Show Cause Why Plaintiffs Should Not Be Held in Contempt. Defendants alleged that Plaintiffs lacked sufficient factual grounds to show actual injury and that Plaintiffs' counsel had deceived the Court on that issue. Defendants had obtained this information by confiscating and reading the attorney-client privileged correspondence that had passed between Plaintiffs and their counsel. Defendants' Motion was denied on January 12,

1998, when the Court concluded there was no evidence supporting allegations that Plaintiffs and their counsel had perpetrated a fraud upon the Court.

Beginning on February 2, 1998, a nineteen-day bench trial was held on the retaliation claims. In March 1999, the Court entered judgment granting Plaintiffs' request for declaratory relief for individual plaintiffs and denying class-wide relief because Plaintiffs failed to show that retaliation pervaded the entire class.

As a continuing consequence of the misconduct of counsel, on February 18, 1999, Plaintiffs filed a Motion for Order to Show Cause Why Deputy Attorneys General Altig and McNeese Should Not be Sanctioned for Professional Misconduct for reviewing Plaintiffs' attorney-client privileged letters. On June 29, 1999, the Court held a three-day evidentiary hearing on the sanctions issue. On September 13, 1999, the Court granted Plaintiffs' Motion, imposing sanctions of attorney's fees of $3,500 and costs of $1,000 upon Attorneys Altig and McNeese.

The undersigned federal judge (hereinafter "the Court," "this Court," or "the undersigned," depending on context) has presided over the *Gomez* case during its entire seventeen-year history. Plaintiffs requested bifurcation on January 16, 1998, and the Court granted the request. On March 23, 1999, the Court issued an order that the retaliation and access to court claim be separated into two cases, with the second amended complaint marking the beginning of the access to court case, *Garcia v. Hayden*, Case No. 99-112-S-LMB.

After *Garcia* began, Defendants filed a motion with District Court Judge Edward J. Lodge challenging the jurisdiction of the undersigned to preside over *Gomez* and *Garcia*. Judge Lodge denied the motion as to *Gomez* because that issue was on appeal, but granted the motion

MEMORANDUM DECISION AND ORDER RE: ATTORNEY'S FEES AND COSTS - 4

as to *Garcia*. Judge Lodge decided that the undersigned should continue to preside over *Gomez* and also referred all pretrial matters in *Garcia* to the undersigned.

Judgment was entered in *Gomez* in March 1999. After that date, the Orders in *Gomez* contemplated that all of the attorney's fees and cost issues in *Gomez* and *Garcia* would be resolved at the same time: after conclusion and appeal of both matters. Eventually in *Garcia* the undersigned recommended that Defendants' Motion for Summary Judgment be granted, and Judge Lodge adopted that recommendation, entering judgment for Defendants in *Garcia*.

Defendants filed a motion for costs in both cases. In February 2001, the undersigned deferred a decision on costs and attorney's fees, again contemplating that the issues would be determined together at a later date--*Gomez* under the undersigned's authority per consent of the parties, and *Garcia* by a report and recommendation to be considered by Judge Lodge. However, Judge Lodge decided to enter an order of costs for Defendants in *Garcia* instead of proceeding by report and recommendation. As a result, the reference to the undersigned in *Garcia* was completed, and only the fees and cost issues in *Gomez* remained.

Defendants now suggest that the Court should view *Gomez* and *Garcia* as one case. After careful and thorough consideration, including an in-depth and analytical evaluation of the entire record, the Court declines to do so. This Court did not and does not preside over *Garcia*. The Court also rejects Plaintiffs' argument that the "law of the case" doctrine *requires* this Court to follow Judge Lodge's decision in *Garcia* when the undersigned decides the costs issue in *Gomez*. In a candid withdrawal, Defendants have deleted their *Garcia* cost award from their cost request here. Judge Lodge's orders do not refer to Defendants' work or expenses in *Gomez*, and Judge Lodge expressly declined to preside over *Gomez* or to review this Court's Orders in *Gomez* as a

MEMORANDUM DECISION AND ORDER RE: ATTORNEY'S FEES AND COSTS - 5

result of the undersigned's jurisdiction by consent of the parties in that case, which was affirmed on appeal. See Appendix B. The undersigned will give due regard to Judge Lodge's decision on the costs issues in *Garcia* insofar as it may be relevant and to the extent it is appropriate in *Gomez* to avoiding duplication or contradiction.

## II.

## SUMMARY OF THE COURT'S DECISION

The Court's decision on attorney's fees is necessarily tied to the decision on the merits of the retaliation claims. Defendants, acting in their official capacity as a result of policy or custom, were found liable to six individual plaintiffs in several instances, but the class of over one thousand inmates could not link the incidents together in a manner that would show a pervasive, system-wide problem and thus failed to obtain class-wide declaratory or injunctive relief. The most equitable way to translate this mixed outcome into an attorney's fee and cost award is to find that in the individual cases, the six inmates were the prevailing party, and in the class action, Defendants were the prevailing party.

In the class action portion of this action, Defendants do not seek an award of attorney's fees for successful defense of that case, but only an award of costs. The Court has determined that Defendants are entitled to their deposition costs in the class action, a sum of $16,552.97.

In the individual cases, the Court agrees with Plaintiffs' self-imposed deduction of 75% of their fees for their work on Judge Lodge's *Garcia* access to court case, and those fees have not been included in their attorney billing statements. Rather, their statements reflect the time Plaintiffs' counsel spent on *all* of the retaliation claims, including class action and individual claims. The Court has reduced the amount Plaintiffs have requested by deleting or reducing

MEMORANDUM DECISION AND ORDER RE: ATTORNEY'S FEES AND COSTS - 6

several line items and then reducing the remaining amount by 80%. The 80% reduction reflects the principle that the attorneys can recover only for work performed on behalf of the six individual Plaintiffs who won injunctive relief and cannot recover for their work on 38 other alleged incidents of retaliation presented at trial or their work on the class action upon which they did not prevail.

With these reductions, the Court awards a total of $187,893.77 in attorney's fees to the NPP attorneys and Stephen Pevar.[1] The Court also concludes that a similar reduction of 80% in costs is warranted, for a total award of $16,133.28 to the NPP attorneys and Stephen Pevar. Plaintiffs shall be permitted to submit a final "fees-on-fees" application, after which a final judgment on the fees and costs awards will be entered. Attorney Howard Beladoff's fee application showed various discrepancies in the amounts requested, and he shall be required to file a clarifying application, which the Court will consider when it considers the "fees-on-fees" request.

## III.

## REVIEW OF ATTORNEY'S FEES

### A.    Standard of Law Governing Attorney's Fees Awards

Title 42 U.S.C. § 1988 authorizes an award of attorney's fees as part of costs in civil rights actions brought under 42 U.S.C. § 1983. "The purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Hensley v. Eckerhart*,

---

[1]  Stephen Pevar is an American Civil Liberties Union (ACLU) attorney. The National Prison Project (NPP) is a "project of the ACLU National Office." *See Plantiffs' Fee Application*, p. 3 (Docket No. 821). Because Mr. Pevar and the NPP attorneys have separately designated their work and the amounts of fees and costs, for purposes of clarity the Court treats them separately as well.

MEMORANDUM DECISION AND ORDER RE: ATTORNEY'S FEES AND COSTS - 7

461 U.S. 424, 103 S.Ct. 1933 (1983) (citing H.R.Rep. No. 94-1558, p. 1 (1976)).  When a fee

application is filed, a court first determines the prevailing party, and then determines a reasonable

fee, if applicable.  *Id.*, 461 U.S. at 433, 103 S.Ct. at 1939.

     Courts have "considerable discretion" over fee awards under § 1988.  *Corder v. Gates*,

947 F.2d 374, 380 (9th Cir. 1991).  However, courts "must clearly articulate sound reasons in

support of their fee awards."  *Id.*  In its written decision, a court should provide "a concise but

clear explanation of its reasons for the fee award." *Hensley*, 461 U.S. at 437, 109 S.Ct. at 1941.

**B.     Discussion of Prevailing Party Status**

     Both sides argue that they are the prevailing party in this case.  Each has set forth a fairly

compelling argument, supported by some case law.  Having considered the guidance provided by

the United States Supreme Court on prevailing party status, and having considered the unusual

circumstances of this case, the Court finds and thus concludes that Defendants are the prevailing

party in the class action portion of the case and that six Plaintiffs are the prevailing parties in the

individual claimant portion of the case.

     While prevailing party status once encompassed nearly any type of success resulting from

a complaint, *Hensley* and later cases made it more difficult to achieve prevailing party status.  In

*Hensley*, the Supreme Court determined that plaintiffs are considered prevailing parties in a

lawsuit if "they succeed on any significant issue in litigation which achieves some of the benefit

the parties sought in bringing the suit.' " *Id.*, 461 U.S. at 433, 103 S.Ct. at1939.  In *Texas State*

*Teachers Association v. Garland Independent School District*, 489 U.S. 782, 792, 109 S.Ct.

1486, 1493 (1989), the Supreme Court clarified that, in order to be deemed the "prevailing

party," the plaintiff must be able to point to a resolution of the dispute which changes the legal

MEMORANDUM DECISION AND ORDER RE: ATTORNEY'S FEES AND COSTS - 8

relationship between itself and the defendant." In this respect, a court is free to use its discretion to decide that "a purely technical or *de minimis* victory" is "so insignificant . . . as to be insufficient to support prevailing party status." *Id.*, 489 U.S. at 792, 109 S.Ct. at 1493-94.

Stated another way, where there has *not* been a material alteration in the parties' legal relationship, the degree of the plaintiff's success goes to the *availability* of the fee, not to the fee's *reasonableness. See id.*, 489 U.S. at 792-93, 109 S.Ct. at 1494. As a result, the Court rejects Plaintiffs' argument that a common core of legal issues and facts requires the Court to find that they are the "prevailing party" in the combined class and individual actions. *See Hensley*, 461 U.S. at 434, 103 S.Ct. at 1940 ("common core" theory applied to reduce fees for unsuccessful claims of party *after* prevailing party analysis was applied).

In the cases following *Hensley*, the United States Supreme Court reiterated that "liability on the merits and responsibility for fees go hand in hand; where a defendant has not been prevailed against, either because of legal immunity or on the merits, § 1988 does not authorize a fee award against that defendant." *Farrar v. Hobby*, 506 U.S. 103, 109, 113 S.Ct. 566, 572 (1992) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3104 (1985)). Stated another way, "[i]n the absence of relief, a party cannot meet the threshold requirement of § 1988 that he prevail, and in consequence he is not entitled to an award of attorney's fees." *Rhodes v. Stewart*, 488 U.S. 1, 4, 109 S.Ct. 202, 204 (1988).

Having considered the current status of the law, this Court agrees with those lower courts that have decided that two separate "prevailing party" determinations should be made where a class action has a mixed result. *See Foster v. Board of School Commissioners of Mobile County, Alabama*, 810 F.2d 1021 (11th Cir. 1987); *Croker v. Boeing Co. (Vertol Division)*, 444 F.Supp.

890 (D.C. Pa. 1977), *vacated in part on other grounds*, 662 F.2d 975 (1981); *but cf. Rudebusch v. Arizona*, 2007 WL 2774482 (D. Ariz. 2007) (nonprisoner case).  In a class action case, the plaintiffs are legally distinct and separate from one another--each named plaintiff/class representative asserts an individual action for himself; in addition, "the class of unnamed persons described in the certification acquire[s] a legal status separate from the interest asserted by the [class representative]." *Sosna v. Iowa*, 419 U.S. 393, 399 (1975).  Because each "plaintiff" is legally distinct, and, here, factually distinct (over one thousand inmates in the class versus six individual prevailing inmates), it is appropriate to deem Defendants the prevailing party in the class action, and the six relief-winning Plaintiffs the prevailing parties in the individual actions.

The Court rejects Plaintiffs' argument that the *class* obtained a declaratory judgment or that a "material alteration in the legal relationship" occurred between Defendants and the class consisting of over one thousand inmates.  In the Findings of Fact, Conclusions of Law, Memorandum Decision and Order (Docket No. 608), the Court concluded that the following individuals produced evidence at trial to show eleven incidents of retaliatory conduct: Lee Hays (two incidents) (pp. 14 & 26), Wayne Olds (two incidents) (pp. 17 & 27), Bob Jones (p. 19), Patrick Hall (p. 23), Thomas Sanger (p. 24) , Carl Shively (p. 24), Michael McDonald (p. 28), Alfredo Roman (two incidents) (pp. 30-31).  In addition, the Court found and concluded that, in the past, Defendants had reduced the number of inmate law clerks to retaliate against the law clerks (p. 21).  In the Amended Judgment, the Court granted *individual* injunctive relief only to Plaintiffs Alfredo Roman (named plaintiff), Thomas Sanger (class member), Carl Shively (class member), Lee Hayes (named plaintiff), Bob Jones (named plaintiff), and Wayne Olds (class member).  Importantly, the Amended Judgment specifically provided that "prospective class-

wide injunctive relief is denied because the retaliatory conduct occurring was not sufficiently

pervasive to warrant relief," which amounts to a judgment for Defendants. *See Amended

Judgment*, p. 2 (Docket No. 710).[2]

On appeal of this case, the Ninth Circuit recognized the distinction between class-wide

victory and individual victory in an official capacity action:

> In sum, the relief granted addressed only the harm caused each individual inmate.
> It did not apply to the prison system as a whole, or even to classes of prisoners. At
> most, the injunction affects a few isolated decisions over the course of these
> inmates' sentences.

255 F.3d at 1130-31. That Defendants in their official capacity were found liable to Plaintiffs as

a result of Defendants' policy or custom in a few limited circumstances is *not* the same as

winning class-wide declaratory or injunctive relief. Here, no class-wide constitutional violation

was found, and no class-wide injunctive relief was won. The class's legal relationship with

Defendants was not materially altered, either by declaratory or injunctive relief.

Finally, language from the Prison Litigation Reform Act (PLRA) supports the notion that

two distinct prevailing party decisions should be made to account for unsuccessful portions of a

prisoner class action. Title 42 U.S.C. § 1997e(d)(1)(A) provides that attorney's fees in prisoner

civil rights cases should not be awarded unless "the fee was directly and reasonably incurred in

proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee

---

[2] The Amended Judgment reads:
> IT IS HEREBY ORDERED AND ADJUDGED that Plaintiffs be awarded
> a Declaratory Judgment decreeing that Defendants have engaged in unlawful
> retaliation against members of the class of inmate Plaintiffs while such inmates
> were engaged in the pursuit of federally guaranteed rights. However, prospective
> class-wide injunctive relief is denied because the retaliatory conduct occurring
> was not sufficiently pervasive to warrant relief.
*Amended Judgment*, p. 2 (Docket No. 710).

MEMORANDUM DECISION AND ORDER RE: ATTORNEY'S FEES AND COSTS - 11

may be awarded under section 1988 of this title." Under this provision, the Court has a duty to

determine whether the attorney's fees sought were "directly and reasonably incurred in securing

the prospective relief" obtained in the case. *Laube v. Allen*, 506 F.Supp. 2d 969 (D. Ala. 2007).

As a result, Plaintiffs are not entitled to attorney's fees on the class action portion of the case, and

Defendants are entitled to recover their costs. Defendants make no request for attorney's fees.[3]

 Turning now to the individual cases, the Court finds and thus concludes that Plaintiffs

Hays, Jones, Roman, Sanger, Shively, and Olds were prevailing parties in each of their own

individual cases. They obtained individual retrospective and prospective injunctive relief, and

thus the outcome of the case altered the legal relationship of the parties. *See Amended Judgment*

(Docket No. 710). *See Croker*, 444 F.Supp. at 894.

 Defendants next argue that because Plaintiff Hays died in 2001, his attorney's fees claim

abated. The Court is not persuaded by this argument in light of the procedural posture of this

case. The instant case is unlike *Anderson v. Correctional Medical Services*, 2005 WL 3263896

(D. Idaho 2005), where the plaintiff died before his claims were brought to judgment. There, this

Court recognized that a cause of action under 42 U.S.C. § 1983 survives the death of the plaintiff

for the benefit of his estate only where the law of the forum state creates a right of survival, *see*

*Robertson v. Wegmann*, 436 U.S. 584 (1978), and that the Idaho Supreme Court has determined

that a civil rights cause of action abates upon the death of the plaintiff, *see Evans v. Twin Falls*

---

 [3] A defendant may recover attorney fees under 42 U.S.C. § 1988 only if "the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Hughes v. Rowe*, 449 U.S. 5, 14, 101 S.Ct. 173(1980) (citations omitted). That is not the case here.

MEMORANDUM DECISION AND ORDER RE: ATTORNEY'S FEES AND COSTS - 12

*County*, 118 Idaho 210, 796 P.2d 87 (1990).  In both *Anderson* and *Evans*, the plaintiff died

before the complaint was prosecuted to judgment.

Recognizing this distinction in *Smith v. Beauclair*, CV03-222-C-EJL, Judge Lodge

recently ruled that the plaintiff's estate could recover attorney's fees for services provided to the

plaintiff during his lifetime, distinguishing Smith's facts from those in *Evans* because judgment

in Smith's case occurred *before* Smith's death.  See *Order of July 22, 2008* in *Smith v. Beauclair,*

CV03-222-C-EJL (Docket No. 144).  This Court agrees.  It is well established that, in general,

"an action is not abated by the death of a party after the cause has reached a verdict or final

judgment and while the judgment stands, even where the judgment is based on a cause of action

that would not have survived had the party died before judgment."  *Chopra v. General Electric*

*Co.*, 527 F.Supp. 2d 230, 239-40 (D. Conn. 2007) (citing, among other sources, 1 AmJur. 2d

Abatement, Survival and Revival § 58 (2005)).

Here, judgment was entered in 1999, prior to Plaintiff Hays's death in 2001.  Therefore,

his claim for fees did not abate, and his estate would normally be entitled to attorney's fees.

However, because this case has "special circumstances" justifying an award of attorney's fees to

be paid directly to counsel, the Court will not require Plaintiffs' counsel to have a personal

representative appointed.  *See Hayes v. Astrue*, 2008 WL 648563, *3 (N.D. Cal. 2008).[4]

---

[4]  The district court in *Hayes* cited two instances in which fees could and should be paid
directly to attorneys: where the attorneys were part of a nonprofit legal services organization, *see
id.* (citing *Grand Boulevard Improvement Association v. City of Chicago*, 553 F.Supp. 1154,
1169 (N.D. Ill. 1982)), and where the plaintiffs were prison inmates, *see id.* (citing *Wedra v.
Thomas*, 623 F.Supp. 272, 278 (S.D.N.Y. 1985) ("it would be 'foolish if not imprudent'" to pay
[attorney's] fees to prison inmates)).  In *Wedra*, the court noted that direct payment to attorneys is
also justified because inmates do not actually pay any out-of-pocket attorney's fees.

MEMORANDUM DECISION AND ORDER RE: ATTORNEY'S FEES AND COSTS - 13

Defendants further argue that the three successful class members who were not named

class representatives (Olds, Sanger, Shively) cannot obtain an award of attorney's fees on their

claims because the class did not prevail and their claims are subsumed by the class loss. These

three class members received minimal relief on their individual claims. Defendants point to a

similar result in *Croker v. Boeing Co. (Vertol Division)*, 444 F.Supp. 890 (D.C. Pa. 1977), where

four class representative plaintiffs were successful on their individual claims, two un-named

class members were successful on their individual claims, but the class lost on its claims. *Id.* at

894. In *Croker*, the district court awarded attorney's fees to the four class representative

plaintiffs but held that the two un-named class members could not obtain attorney's fees because

the attorney services were provided to the class.

The Court rejects Defendants' argument that the individual class members are not entitled

to an award of attorney's fees. More recent cases have clarified that federal courts have authority

to determine the claims of un-named class members either in the class action or in a subsequent

action, leading to the conclusion that attorney's fees on the individual actions may be awarded in

either circumstance. See *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 880, 104

S.Ct. 2794, 2801-02 (1984) (an unsuccessful class action binds class members and forecloses

them from bringing a subsequent *class* action on the same subject matter, but it does not

foreclose them from bringing subsequent *individual* claims on the same subject); *see also*

*Edwards v. Boeing Vertol Company*, 750 F.2d 13, 15 (3d Cir. 1984) (noting that "[i]t might be

inferred from language in the *Cooper* opinion, that the district court *has* discretion to adjudicate

[individual claims of un-named class members] if it so desire[s]") (relying on *Cooper*, 467 U.S.

at 881, 104 S.Ct. at 2802).

MEMORANDUM DECISION AND ORDER RE: ATTORNEY'S FEES AND COSTS - 14

In the instant action, the Court resolved the unnamed individual class members' claims in a judicially efficient manner, which avoided unnecessary, duplicative litigation of their individual claims in a later action. As a result, the Court finds, and thus concludes, that awarding fees to the three un-named class members on their individual claims is both warranted and appropriate.

**D.      Standard of Law Re: Lodestar Amount and Reductions**

To calculate a reasonable fee award, the Court is required to multiply the number of hours reasonably expended on the litigation by a reasonable hourly rate. This calculation, called the "lodestar" figure, provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Texas Teachers Ass'n*, 489 U.S. at 792-93; *see Gates v. Deukmejian*, 987 F.2d 1392, 1297 (9th Cir. 1992). The lodestar figure may be adjusted up or down based on a variety of other items factoring into the reasonableness of the fee award.

The lodestar figure is presumed to represent a reasonable fee, *Blum v. Stenson*, 465 U.S. 886, 897 (1984), but it may be adjusted in consideration of the following twelve factors (known as the *Kerr* factors in the Ninth Circuit):

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Blanchard v. Bergeron*, 489 U.S. 87, 92 n.5 & 94-95, 109 S.Ct. 939, 943 n.5 & 945-46 (1989) (explaining continuing application of the twelve factors after the lodestar method was adopted); *see Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cr. 1975) (defining the method that was used to determine attorney's fees prior to the lodestar method). Many of the *Kerr* factors

MEMORANDUM DECISION AND ORDER RE: ATTORNEY'S FEES AND COSTS - 15

will already have been considered in the initial lodestar calculation. *See Hensley*, 461 U.S. at 434, 103 S.Ct. at 1940.

The Court may also reduce the award for inadequate documentation of hours and for hours "that were not 'reasonably expended,'" including "hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 433-34, 103 S.Ct. at 1930-40. Finally, the Court may adjust the fee if only limited success was obtained, because "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988." *Id.* at 440, 103 S.Ct. at 1943.

The "party opposing the fee application carries the burden of rebuttal" and must submit "evidence challenging the accuracy and reasonableness of hours charged[] or factual assertions made in affidavits submitted by the prevailing party." *Lozeau v. Lake County, Montana*, 98 F. Supp. 2d 1157, 1169 (D. Montana 2000).

## E.   Standard of Law and Discussion of Reasonable Hourly Fee

Prior to April 26, 1996, the enactment date of the Prison Litigation Reform Act (PLRA), attorneys in prisoner civil rights cases could charge a reasonable and customary fee. Therefore, time billed in this case prior to April 26, 1996, should be awarded according to reasonable and customary rates without applying the PLRA cap. *See Madrid*, 190 F.3d at 995. However, after that date, attorneys were on notice that their fees were subject to the restrictions of the PLRA, which "caps the maximum hourly rate" payable for attorney's fees. *See Madrid v. Gomez*, 190 F.3d 990, 994-95 (9th Cir. 1999) (relying on *Martin v. Hadix*, 517 U.S. 343, 119 S.Ct. 1998 (1999)); *Webb v. Ada County*, 285 F.3d 829, 838-39 (9th Cir. 2002).

Here, Mr. Pevar and the NPP attorneys seek the amount of $169.50 per hour for time billed before and after April 26, 1996.[5]  Mr. Beladoff requests the rate of $169.50 per hour for work performed after to the PLRA enactment date,[6] but an hourly rate of $275.00 for his time billed prior to the PLRA enactment date.  Mr. Beladoff shows that he was awarded $275.00 per hour for time billed between 2004 and 2007 in *Jeff D. v. Kempthorne*, CV80-4091-S-BLW, and he has produced the Affidavit of Walt Sinclair in *Jeff D.* to support his claims.  Consequently, the $275.00 per hour sought by Mr. Beladoff for pre-PLRA attorney's fees is reasonable and customary.

**F.      Summary of Plaintiffs' Attorney's Fees Request**

After making their own suggested reductions, Mr. Pevar and the NPP attorneys request a total of $501,667.15 in attorney's fees and expenses under 42 U.S.C. § 1988.  Plaintiffs have separated the amount of fees on the retaliation merits and sanctions issues.  Of the total amount sought, $283,961.35 relates to the retaliation issue, and $217,705.80 is for services related to the sanctions issue.  Plaintiffs argue that *prior* to arriving at their total submitted, they deducted 75% of their total time to account for the time spent on the *Garcia* access to court issues, and then,

---

[5]  Section 803(d)(3) of the PLRA (codified at 42 U.S.C. § 1997e(d)(3)) provides: No award of attorney's fees in an action described in paragraph (1) shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18, for payment of court-appointed counsel.  The current hourly fee rate for court-appointed counsel section under 18 U.S.C. § 3006A is $113.00 per hour.  Therefore, the PLRA fee rate in this case is $169.50.

Prior to October 1, 2001, the PLRA fee rate was $112.50 per hour ($75 per hour x 150%).  It is allowable for attorneys to be awarded fees at the current rate, rather than the historical rate, to compensate the plaintiff for the delay in payment.  *Missouri v. Jenkins*, 491 U.S. 274, 283 (1989); *see Gates v. Deukmejian*, 987 F.2d 1392, 1406-07 (9th Cir. 1993) (applying *Jenkins*).

[6]  Mr. Beladoff asks for the higher rate through December 1997, but appears that the high rate would be allowable only through April 26, 1996.

MEMORANDUM DECISION AND ORDER RE: ATTORNEY'S FEES AND COSTS - 17

from the remaining 25%, they reduced their fees and expenses on the retaliation merits issue an additional 66% to account for partial success--winning only 12 of 50 claims presented. In other words, on the retaliation merits issue, they seek 34% of the total amount billed, but on the sanctions issues, they seek 100% of their fees because they assert that they won "100%" of the sanctions issue.

Local counsel Howard Beladoff billed his fees separately; he likewise discounted his total fees by 75% (for *Garcia*) and then 66%. Mr. Pevar's statement shows Mr. Beladoff seeking $8,815.15 in fees, while Mr. Beladoff's statement shows an amount of $19,929.75[7] in fees. The Court uses the higher number, based on Mr. Beladoff's personal declarations, and calculates his fees separate from the other counsel.

All counsel state that they have already eliminated what they consider to be redundant, duplicative, or unnecessary time. The attorneys have indicated an "N" or "N/C" for such time on the billing records.

G.     **The Court's Analysis of the Lodestar and Defendants' Objections**

Having determined that some reductions in the requested amount of attorney's fees are appropriate, the Court has considered various methods of applying reductions. The *Hensley* Court explained that to arrive at a reduced amount, a court "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." 461 U.S. at 440, 103 S.Ct. at 1943. Facing a task similar to the one at bar, the district court in *Laube v. Allen*, determined that a percentage reduction was fair and expeditious.

---

[7] Mr. Beladoff's total is $17,590.65, but it appears to add up to $19,929.95.

MEMORANDUM DECISION AND ORDER RE: ATTORNEY'S FEES AND COSTS - 18

Given that this fee application is voluminous, as well as the complexity of this case and the lack of detail in some of the line items, the court has determined that a line-by-line excision of hours is not appropriate for this task. *See Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994). Instead, the court will make an across-the-board percentage cut to the number of hours billed. . . . In applying an across-the-board percentage cut, the court aims to simulate the effect of a line-by-line analysis while avoiding the waste of judicial resources that such an impractical approach would entail where billing records are voluminous.

506 F.Supp. 2d at 981. *See also Schwartz v. Secretary of Health & Human Services*, 73 F.3d 895, (9th Cir. 1995) (same). That will be the approach utilized by the Court in the instant case.

While Plaintiffs have suggested that their fees on the retaliation claims be reduced by 66%, Defendants suggest that the reduction should be closer to 90%. *Oral Argument Transcript*, 56:21-25 (Docket No. 848). Based on the Court's review of the record and consideration of the parties' arguments, the Court finds and concludes that an across-the-board reduction of 80% is appropriate. In so determining, the Court has considered all of the following:

1.    Analysis of Attorney's Fees on the Retaliation Claims

The Court begins with the NPP attorneys' original billing calculation of 4,483.1 hours at $169.50 for a total of $759,885.45, their calculation for NPP paralegal and law clerk fees of 69.8 hours at $90.00 for a total of $6,282,[8] and Mr. Pevar's calculation of 406.36 hours at $169.50 for a total of $68,878.02. These figures make up the beginning lodestar amount of $835,045.47.[9]

Here, Defendants argue that Plaintiffs had too many lawyers, and suggest that the Court disregard the total fees of two of the five or six trial attorneys for duplicative efforts, namely,

---

[8] Plaintiffs' fee application has a calculation error in the paralegal fees. It shows that 45.4 hours x $90 per hour equals $221, when the true amount is $4,086, as reflected in Paralegal Brian Jacobson's time sheets. The Court uses the higher amount.

[9] The Court calculates its lodestar amount after Plaintiffs' voluntary *Garcia* reductions, but prior to Plaintiffs' suggested 66% success-based reductions. This figure does not include Mr. Beladoff's fees, considered separately below.

NPP Attorney Jennie Pittman ("Ms. Pittman") and Mr. Beladoff. The Ninth Circuit has cautioned that "courts ought to examine with skepticism claims that several lawyers were needed to perform a task, and should deny compensation for such needless duplication as when three lawyers appear for a hearing when one would do." *Democratic Party of Washington State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004).

Particularly, Defendants argue that NPP attorney Jennie Pittman "billed 1,276 hours, "despite never saying a word in open court or signing a pleading or even being admitted to practice in Idaho or before this Court *pro hac vice*." *Defendants' Objections to Attorney's Fees*, p. 18 (Docket No. 837). Of the total amount Ms. Pittman billed, she spent 129.7 hours taking and transcribing her notes from trial. During the same period of time, Ms. Lee billed 108.4 hours and Mr. Balaban, 70.5 hours for the same tasks. The Court agrees that Ms. Pittman's additional note-taking was duplicative of Ms. Lee and Mr. Balaban's efforts, and therefore her 129.7 hours shall be deducted from the lodestar amount.

According to Mr. Pevar, Ms. Pittman organized the trial exhibits presented in court and was deemed by her legal team as "the supervisor of all the documents." *Oral argument Transcript*, p., L. 5 (Docket No. 848). Because trial exhibit organization is a task that can be performed by a paralegal, the Court shall order that Ms. Pittman's remaining time of 1,146.30 hours be reduced to $90 per hour, a difference of $79.50 per hour.[10]

The Court does not agree that the trial time of local counsel, Mr. Beladoff, was *per se* duplicative or excessive. Mr. Beladoff billed 7.5 hours for the first day of the nineteen-day trial,

---

[10] *Cf. Richlin Security Service Co. v. Chertoff*, 128 S.Ct. 2007 (2008) (Equal Access to Justice Act case allowing award of paralegal fees at prevailing market rate againt the U.S. government).

MEMORANDUM DECISION AND ORDER RE: ATTORNEY'S FEES AND COSTS - 20

which began February 1, 1998, and only 8.3 hours for the entire month of February 1998. *See Howard Beladoff Time Sheets*, p. 10 (Docket No. 828-4). The Court will not reduce Mr. Beladoff's fees for trial participation, and Defendants have not pointed to any particular items that are duplicative in his billing.

Defendants further argue that Plaintiffs' attorney's fees should be reduced because the billing statements do not show that the attorneys devoted very many hours to the twelve individual claims that resulted in the six instances of injunctive relief. This contention has merit. Plaintiffs' counter argument-- that the Court should overlook the nonspecificity of the bills because the class action claim and the unsuccessful claims had a "common core"-- is unavailing. Here, *unlike* in *Hensley*, this case *can*, in large part, "be viewed as a series of discrete claims," because Plaintiffs' case was made up of 50 separate instances of retaliation that occurred over a decade. *See* 461 U.S. at 435, 103 S.Ct. at 1940. Compensation for the extra attorney time spent in trying to link these individual instances together to show class-wide pervasiveness over this length of time should *not* be included in the attorney's fees calculation. Plaintiffs' "[c]ounsel admit that each retaliation claim involved a 'a one-time event' and that each was 'finite in scope.'" *Defendants' Objection*, p. 16 (Docket No. 837) (quoting *Plaintiffs' Declaration*, p. 4, ¶ 9, Docket No. 822).

To bolster their argument, Defendants' in-house paralegal prepared a detailed computer analysis of the billing statements. Defendants argue that the analysis shows that Mr. Pevar spent only approximately 5 % of his total hours on *all* of the retaliation claims. *Kevin Burnett Affidavit*, ¶¶ 28-29 (Docket No. 837-3). The computer analysis further shows that there are only 30 billing entries mentioning the word "retaliation" in Mr. Pevar's billing statements *Id.*, ¶ 28.

MEMORANDUM DECISION AND ORDER RE: ATTORNEY'S FEES AND COSTS - 21

There are only 37 entries in the NPP attorneys' billing statements mentioning retaliation. *Id.*, ¶ 37. Defendants estimate that only 495 hours of total billings mention the successful plaintiffs. *Oral Argument of Attorney's Fees Application, Transcript,* p. 50, ll. 14-16 (Docket No. 848).

A court may reduce an attorney's fees award for inadequate documentation of hours in the billing statements. *Hensley*, 461 U.S. at 433-34, 103 S.Ct. at 1930-40. While an attorney is not required to keep extremely detailed records, he must produce records "identify[ing] the general subject matter of his time expenditures" to allow the Court to properly analyze the fee application in light of limited success. *Hensley*, 461 U.S. at 437 n.12, 103 S.Ct. at 1941 n.12.

The Court rejects Plaintiffs' argument that Defendants should have hired an unbiased expert to analyze the fees rather than use an in-house paralegal who was involved in the case. Thankfully, the Supreme Court has admonished that the fees portion of the case "should not result in a second major litigation." 461 U.S. at 437, 103 S.Ct. at 1941. Defendants' analysis makes economic and practical sense, and it is supported not only by the billing statements but also by references to the individuals' cases in the record. The Court takes into consideration the lack of expertise and the potentially biased nature of the analysis, but those items go to "weight, not admissibility" of the computer analysis in the Court's determination of an appropriate fee award.

Defendants also argue that the lack of specific references in Plaintiffs' attorneys' billing statements is matched by the lack of references in the record showing time spent on the successful claims. Defendants persuasively point out:

> Out of 3,959 pages of trial transcripts, 701 pages or 17% of the total, deal with the six instances of prospective relief. Of the total amount of trial transcripts devoted to specific individuals, the percentages dealing with their successful claims were: Olds, 23%; Hays, 9%; Jones, 10%; Roman, 11%; Shively, 12%; Sanger, 12%. Of a total of 4,990 pages of deposition transcripts generated in 58

MEMORANDUM DECISION AND ORDER RE: ATTORNEY'S FEES AND COSTS - 22

depositions, only 59 pages of testimony total [sic] relate directly to instances
where the Court granted prospective relief. Plaintiffs propounded hundreds of
discovery requests, of which only 26 appear to relate in any way to retaliation,
only 13 to claims brought to trial and only one to a claim on which prospective
relief was granted.

*Defendants' Response to Plaintiffs' Attorneys' Fees Application* (Docket No. 837, p. 13).

Plaintiffs' pleadings show a similar trend. Notably, the original 1991 Complaint did not

state a retaliation claim. It contained only an access to court claim and an equal protection claim

regarding access issues particular to Spanish-speaking inmates. Only one sentence in the

Complaint contained an allegation of retaliation as one of many factual issues supporting the

access to court claim. A separate retaliation claim was presented in the actual litigation six years

later in December 1997, after the *Lewis v. Casey* decision *and* after the IDOC made plans to

change the prison access to courts system in response to *Lewis v. Casey.* Plaintiffs themselves

candidly acknowledge that "counsel had to change their trial strategy abruptly after *Lewis v.

Casey* was decided in June 1996." *Motion for Attorney's Fees*, p. 19 (Docket No. 821). Thus,

the court record and pleadings support the notion that of the time between 1989 and 1996,

relatively little time was spent on the retaliation claims, and importantly at this stage of the case

on requests for fees and costs, even less time was spent on the six successful retaliation claims,

as demonstrated in the nonspecific nature of the billing statements.

In addition, the PLRA prohibits an award of fees unless "the fee was directly and

reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute

pursuant to which a fee may be awarded under section 1988 of this title." 42 U.S.C. §

1997e(d)(1)(A). With all of this in mind, the Court concludes that the lodestar should be reduced

to account for loss of the class action, which, in part, unnecessarily compounded the individual

claims into a monolithic case. Plaintiffs should not be able to recover for attorney time spent on

MEMORANDUM DECISION AND ORDER RE: ATTORNEY'S FEES AND COSTS - 23

general "retaliation claims" when such fees were incurred *prior* to the date when the actual prevailing clients' cases arose.  One of Plaintiff Hays's claims arose in 1985, and the other in 1992, spanning the entire time attorneys worked on the case.  The retaliatory firing of law clerks by Deputy Warden Miller occurred in 1988; and the claims of class member Olds arose in 1993 and 1994.  Plaintiff Roman's claims, arose at the earliest on June 25, 1996, and Plaintiff Jones' claim arose no earlier than March 1997. The Court has taken into account the inception dates of these claims in arriving at its 80% reduction figure.

Awarding partial fees for the successful plaintiffs and yet reducing the amount by 80% to account for the loss of the class action and the other individual claims supports the purposes of § 1988.  The limited success and resultant reduction of the attorney's fees are not reflections of the skill, integrity, and work product of Plaintiffs' counsel, but rather a reflection of Plaintiffs' decision to press forward with their class action case, which proved unsuccessful.[11]  On the importance of the factor of success of the claims in the litigation, the *Hensley* Court reiterated:

> If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained.

461 U.S. at 436, 103 S.Ct. at 1941.

One additional issue warrants further comment. The Court rejects the additional arguments of Defendants--that Plaintiffs' counsel billed too much for post-trial briefing, that

---

[11] Rather than deduct hour-by-hour amounts for the equivalent of the nine weeks of billing that Plaintiffs' attorneys spent on Plaintiffs' post-trial briefing (344.6 hours), which the Court deems excessive, the Court has accounted for a reduction by deducting an across-the-board 80% figure. *See Defendants' Objection*, p. 19 (Docket No. 837).

MEMORANDUM DECISION AND ORDER RE: ATTORNEY'S FEES AND COSTS - 24

counsel should not have billed their "commuting time," and that fewer travel time hours should have been billed--for the reason that such arguments merely even the scales. The Court has also considered that Mr. Pevar and NPP attorneys did not request to be compensated at a higher rate prior to April 25, 1996, that taking this case prevented Plaintiffs' counsel from working on other fee-producing litigation, that prisoner litigation is generally considered to be undesirable attorney work, and that Mr. Pevar and co-counsel are respected, highly skilled, and experienced in inmate civil rights litigation. Reviewing the remaining *Kerr* factors, the Court has also considered that an individual inmate retaliation claim is not novel or complex,[12] which weighs against a large attorney's fee award, and that a class action prisoner case is more complex, which, here, weighs against a high attorney's fees award because the class action was unsuccessful. The other *Kerr* factors are not relevant.

The Court concludes that a reasonable deduction for time spent on the unsuccessful individual claims and the class-action portion of the case is 80%, calculated as follows:

---

[12] The Ninth Circuit had clearly set forth the standard for a retaliation claim in 1985, explaining that a retaliation claim must allege the following: (1) that Plaintiff exercised a constitutional right; (2) that prison officials' behavior was in retaliation for Plaintiff having exercised that right; and (3) that prison officials' actions either did not advance legitimate correctional goals or were not narrowly tailored to meet those goals. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir.1985).

MEMORANDUM DECISION AND ORDER RE: ATTORNEY'S FEES AND COSTS - 25

| **Biller** | **Hours sought** | **Rate** | **20 % of Hours** | **Total Amount** |
|---|---|---|---|---|
| Paralegal Jacobson | 45.4 | 90.00 | 9.08 | $817.20 |
| Ms. Lee | 1008.1 | 169.50 | 201.62 | $34,174.59 |
| Ms. Alexander | 162.4 | 169.50 | 32.48 | $5,505.36 |
| Mr. Balaban | 657 | 169.50 | 131.4 | $22,272.30 |
| Ms. Pittman | 1276.4 (1146.7 allowed) | 90.00 | 229.34 | $20,640.60 |
| Law clerks | 24.4 | 90.00 | 4.88 | $439.20 |
| Ms. Rifkin | 15.9 | 169.50 | 3.18 | $539.01 |
| Ms. Winter | 1363.30 | 169.50 | 272.66 | $46,215.87 |
| Mr. Pevar | 406.36 | 169.50 | 81.27 | $13,775.60 |
| **Total for the NPP attorneys and Mr. Pevar:** | | | | **$144,379.73** |

2.      Analysis of Attorney's Fees on Sanctions Issue

During the course of trial on the retaliation claims, Plaintiffs discovered that Defendants'

counsel, Timothy McNeese and Stephanie Altig, were confiscating and reading Plaintiffs'

attorney-client privileged letters.  The correspondence related to Plaintiffs' litigation strategy and

evidence.  In a surprising tactical move, and one that obviously did not result in the intended

consequences, Defendants' counsel attempted to use the correspondence in their clients' favor by

arguing that the privileged and confidential letters showed that Plaintiffs' attorneys did not really

have specific factual evidence to support the class action claims, contrary to Plaintiffs' attorneys'

simultaneous assurances to the Court that such evidence existed.

After Defendants' counsel revealed that they had possession of Plaintiffs' attorney-client

privileged correspondence, the Court issued an Order to Show Cause Why Defendants' Counsel

MEMORANDUM DECISION AND ORDER RE: ATTORNEY'S FEES AND COSTS - 26

Should Not Be Sanctioned for Professional Misconduct. After Plaintiffs' counsel conducted

discovery on the sanctions issue, a three-day evidentiary hearing was held. The Court found that

(1) Defendants' attorneys' misconduct caused "unnecessary litigation"; (2) IDOC used the

information obtained from the attorney-client privileged correspondence for "potential tactical

advantage"; and (3) the acts "constituted bad fath conduct and warrant[ed] imposition of

sanctions." *Findings of Fact, Conclusions of Law, Memorandum Decision and Order Relating

to Plaintiffs' Motion for Sanctions of September 13, 1999,* p. 18 (Docket No. 718).

Mr. McNeese and Ms. Altig were then personally sanctioned under the Court's inherent

authority and 28 U.S.C. § 1927, which provides in pertinent part:

> Any attorney or other person admitted to conduct cases in any court of the United
> States. . . who so multiplies the proceedings in any case unreasonably and
> vexatiously may be required by the court to satisfy personally the excess costs,
> expenses, and attorneys' fees reasonably incurred because of such conduct.

The sanction consisted of a public reprimand, an attorney's fee award of $3,500 and costs and

expenses in the amount of $1,000. The judgment was affirmed on appeal. *See Gomez v. Vernon,*

255 F.3d 1118 (9th Cir. 2001), *cert. denied,* 534 U.S. 1066 (2001). The Ninth Circuit Court of

Appeals awarded Plaintiffs $80,952.70 for attorney's fees and $1,349.14 in costs for all aspects

of the appeal, including both the retaliation claims and sanctions issue.[13]

A sanction under 28 U.S.C. § 1927 is an award against the offending attorneys personally,

while attorney's fees under 42 U.S.C. § 1988 is an award against the clients or parties. Plaintiffs

now seek from Defendants $245,797.24 in attorney's fees and costs under § 1988. At issue is

whether *Defendants* now must pay additional attorney's fees and costs over and above the

---

[13] Plaintiffs's fees were reduced from the total requested amount of $95,444.95 in
attorney's fees (577.34 hours) and $1,349.14 in expenses. *See* Appendix C.

MEMORANDUM DECISION AND ORDER RE: ATTORNEY'S FEES AND COSTS - 27

amount Defendants' *counsel* paid to Plaintiffs. In *Roadway Express, Inc. v. Piper*, 447 U.S. 752,

100 S.Ct. 2455 (1980), the United States Supreme Court addressed the interplay between § 1927

and § 1988. There, the Supreme Court was called upon to address whether § 1927 allowed an

award of attorney's fees as part of the sanction. It ultimately determined that federal courts could

not award attorney's fees because the former version of § 1927 did not specifically allow it and

because § 1988 did not provide for liability of *an attorney* for the opposing party's attorney's

fees. 447 U.S. at 760-61, 100 S.Ct. at 2461.[14]  Importantly, the Supreme Court noted:

> Section 1927 does not distinguish between winners and losers, or between
> plaintiffs and defendants. The statute is indifferent to the equities of a dispute and
> to the values advanced by the substantive law. It is concerned only with limiting
> the abuse of court processes. Dilatory practices of civil rights plaintiffs are as
> objectionable as those of defendants.

447 U.S. at 762, 100 S.Ct. at 2462.  In short, § 1988 is a prevailing party fee-shifting statute

where fees are assessed to the losing party *and* are tied to the merits of the claim, and § 1927 is a

bad faith abusive-practice statute assessed to the offending attorneys *and* not linked to the merits.

*See also Footman v. Cheung*, 341 F.Supp.2d 1218 (M.D. Fla. 2004) ("The purpose of § 1927 is

to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create

unnecessary costs bear them.").

A number of additional courts have noted that § 1927 should be applied "with restraint

lest the prospect thereof chill the ardor of proper and forceful advocacy on behalf of his client."

*Carrasquillo v. City of Troy*, 2006 WL 304031 (N.D.N.Y. 2006) (internal citation omitted) ; *see*

---

[14] *Roadway Express* was decided in June 1980. It did not allow attorney's fees as a result
of the language of the statute. In September 1980, Congress the statue to allow for attorney's
fees as part of the sanction. *See* Pub. L. No. 96-349 § 390, 94 Stat 1154 (1980).

MEMORANDUM DECISION AND ORDER RE: ATTORNEY'S FEES AND COSTS - 28

*also Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S.Ct. 2123, 2132 (1991).[15]  In

*Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521 (5th Cir. 1996), the court

emphasized the same concept, stating:

> Punishment under this statute [§ 1927] is sparingly applied, and except when the entire course of proceedings were unwarranted and should neither have been commenced nor persisted in, an award under 28 U.S.C. § 1927 may not shift the entire financial burden of an action's defense.

*Id.* at 535 (citation omitted).

The Court granted Plaintiffs' request for § 1927 sanctions, which included attorney's fees

and costs for Defendants' attorneys' conduct.  The sum was the result of considerable thought

and appropriate judicial restraint.  Defendants' counsel were personally responsible for the

conduct, and therefore were personally responsible for the sanction under § 1927.  However, now

that the Court is considering only § 1988 fees and costs for which Defendants will be

responsible, the Court cannot disregard the merits of the case.  Plaintiffs had limited success on

the merits of the claims, and, as a result, the Court will consider the sanctions fees and costs a

part of the overall case and award fees using a calculation of approximately 20% of fees

requested.  After careful study and thoughtful, measured deliberation, the Court specifically

rejects Plaintiffs' argument that they are entitled to 100% of their fees on the sanctions issue

because they were 100% successful on that issue, a result that would shift a major portion of the

burden of litigation onto Defendants in "punishment" for Defendants' attorneys' errors.  The

Court also declines to do as Plaintiffs suggest and adopt the position that the sanctions issued

---

[15]  In *Chalmers*, the Court expressed: "Because of their very potency, inherent powers must be exercised with restraint and discretion.  A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process."  501 U.S. at 44-45, 111 S.Ct. at 2132.33.

"materially altered the relationship" of the class to Defendants and constituted class-wide relief. The sanctions issue was not a claim, it was not a constitutional issue, and it did not concern Defendants' own conduct or the merits of their defenses.

As a result, the Court will award attorney's fees for work on the sanction issue as follows:

| Biller | Hours sought | Rate | 20% of Hours | Total Amount |
|--------|--------------|------|--------------|--------------|
| Ms. Lee | 101.2 | 169.50 | 20.24 | $3,430.68 |
| Ms. Alexander | 57.1 | 169.50 | 11.42 | $1,935.69 |
| Mr. Balaban | 102.5 | 169.50 | 20.50 | $3,474.75 |
| Ms. Pittman | 63.9 | 169.50 | 12.78 | $2,166.21 |
| Ms. Winter | 586.3 | 169.50 | 117.26 | $19,875.57 |
| Mr. Pevar | 372.6 | 169.50 | 74.52 | $12,631.14 |
| **Total:** | | | | **$43,514.04** |

3.     Analysis of Mr. Beladoff's Attorney's Fees

The fee application of Howard Beladoff, local counsel for Plaintiffs, is unclear.  Mr. Pevar shows that Mr. Beladoff's request is $8,815.15 (Docket No. 821, p. 22); Mr. Beladoff's own summary requests $17,590.65 (Docket No. 828, p. 4); however, Mr. Beladoff's summary contains a mathematical error, because the subtotals add up to $19,929.75.  In addition, Mr. Beladoff has requested $275 per hour through December 1997, rather than through April 26, 1996.  Further, the total amounts sought for each year's work as shown on the hourly billing statements for the retaliation claims do not seem to reflect a 66% reduction as stated, and so it is unclear whether he has made other reductions or errors.  The Court shall deny Mr. Beladoff's fee

request without prejudice and allow him to resubmit a clarifying application that enables the Court to make the adjustments set forth above.[16]

## IV.

## ADDITIONAL "FEES-ON-FEES" REQUEST

Plaintiffs are entitled to file a request for an award of attorney's fees for submitting the fee application. Plaintiffs' request shall be filed within thirty (30) days. Defendants may file a brief response no longer than 20 pages to Plaintiffs' fee request within fourteen (14) days after service. No reply shall be filed by Plantiffs.

## V.

## REVIEW OF COSTS

### A.    Standard of Law

Federal Rule of Civil Procedure 54(d) generally provides for an award of costs to the prevailing party. A Rule 54(d)(1) award includes taxable costs, and a Rule 54(d)(2) award of attorney's fees may include "nontaxable expenses." In deciding whether to exercise discretion in favor of a cost award in a civil rights case, the district court should consider the amount of the costs and the financial resources of the plaintiff, including indigency status. *Stanley v. University of Southern California*, 178 F.3d 1069, 1079 (9th Cir. 1999) (internal citations omitted). The Ninth Circuit has held that "Rule 54(d)(1) creates a presumption in favor of awarding costs to a prevailing party, but the district court may refuse to award costs within its discretion."

---

[16] Consistent with the findings and conclusions above, the Court shall reduce Mr. Beladoff's requested fees to 20% of the total to account for the limited success of the individual claimants. As set forth above, the Court finds that the $275 per hour fee is appropriate and applicable prior to April 26, 1996, the enactment date of the PLRA, but Mr. Beladoff's fees will be reduced to $169.00 per hour after that date.

MEMORANDUM DECISION AND ORDER RE: ATTORNEY'S FEES AND COSTS - 31

*Champion Produce, Inc., v. Ruby Robinson Co., Inc.*, 342 F.3d 1016, 1022 (9th Cir. 2003). Reducing costs by the same percentage by which the attorney's fees were reduced is appropriate where the prevailing party was not successful on all claims. *See Betancourt v. Giuliani*, 325 F.Supp. 2d 330, 336 (S.D.N.Y. 2004).

When reviewing *taxable* costs, "courts do not have discretion under Fed.R.Civ.P. 54(d) to tax whatever costs seem appropriate; rather, courts may tax only costs defined in 28 U.S.C. § 1920." *Alflex Corp. v. Underwriters Laboratories, Inc.*, 914 F.2d 175, 176 (9th Cir. 1990). Local Rule 54.1 further defines the types of taxable costs available under Federal Rule 54(d)(1). *See* D.Id.L.Civ.R. 54.1.  Courts have generally held that where a local rule is non-exhaustive in defining the recoverable costs, then the court "may in its discretion, allow other costs," as more generally defined in Federal Rule of Civil Procedure 54(d)(2).  *In re Turn-Key-Tech Matters*, 2002 WL 32521815, at *2 (C.D. Cal. 2002); *see Automotive Products PLC v. Tilton Engineering, Inc.*, 1994 WL 219912, at *3 (C.D. Cal. 1994).  In other words, if a certain cost is included within a category of Rule 54 and is not "affirmatively precluded" by local rule, that cost may be recoverable. *See V-Formation, Inc. v. Benetton Group SPA*, 2003 WL 21403326, at *3 (S.D.N.Y. 2003).  In this case, Local Rule 54.1 specifically, and in some categories exhaustively, defines taxable costs, but it also provides that "[o]ther items may be taxed with prior Court approval." *See* D.Id.L.Civ.R. 54.1(c)(1) to (8).  "Fair estimates" of "nontaxable expenses" allowed by Rule 54(d)(2)(B) are those for which counsel provides a reasonable basis for the estimate. *See Raniola v. Bratton*, 2003 WL 1907865, at *8 (S.D.N.Y. 2003).

**B.    Defendants' Request for Costs in the Class-Action Portion of *Gomez***

At the conclusion of *Garcia*, Defendants filed the same bill of costs in *Garcia* and *Gomez*. (Docket No. 751 in *Gomez*; Docket No. 120 in *Garcia*).  Defendants explained that they

MEMORANDUM DECISION AND ORDER RE: ATTORNEY'S FEES AND COSTS - 32

did so "[o]ut of caution, because the cases were related and "the issue of taxing of costs

appear[ed] to be ripe in both cases." *Memorandum by Defendant in Support of Motion for Costs*,

p.4 (Docket No. 122 in *Garcia*).

In *Gomez*, Defendants seek $31,913.50 in costs.  They have deleted the travel costs for

Mr. McNeese, *Defendants' Bill of Costs* (Docket No. 751, pp. 2-3, section I.A.), and the costs

incurred in *Garcia v. Hayden*, *Defendants' Bill of Costs* (Docket No. 751, pp. 8-9, section II).

Their itemized categories of costs are as follows:

| | | |
|------|------------------------------------------------|-------------|
| I.   | Trial transcript, trial, and hearing costs:    | $7,885.40   |
| II.  | Deposition Costs                               | $16,552.97  |
| III. | Photocopying                                   | $2,544.30   |
| IV.  | Witness Fees                                   | $4,930.83.  |

In *Garcia*, Judge Lodge limited Defendants' award of costs for the following reasons:

"(1) the record demonstrates that the Plaintiffs' resources are limited; (2) the award of full costs

may result in a 'chilling effect on future potential civil rights litigants'; and (3) the case involves

issues of substantial public importance." *Order* (Docket No. 139 in *Garcia*).  Judge Lodge

reduced the costs from a request of $9,589.80, to an amount of $2,531.05, representing only

Defendants' deposition costs.  Here, the same considerations apply, as well as the fact that

Defendants lost a number of the individual claims.  As a result, of the total costs of $31,913.50

sought, the Court shall award Defendants their deposition costs of $16,552.97.  The Court rejects

Plaintiffs' argument that some of the depositions should be disallowed because they were

extraneous and not used at trial because Local Rule 54(c)(3) allows for the cost of depositions

"used for any purpose in connection with the case."

MEMORANDUM DECISION AND ORDER RE: ATTORNEY'S FEES AND COSTS - 33

C.      **Plaintiffs' Request for Costs for the Successful Individual Claims in** *Gomez*

Plaintiffs seeks their costs for the successful individual claims.  The Court agrees that the vast majority of Plaintiffs' copies are not permitted by Local Rule 54.1(c)(5), which allows only for "[t]he cost of an exhibit necessarily attached to a document (or made part of a deposition transcript) required to be filed and served."  Because Plaintiffs have not delineated which costs fit the Local Rule standard, the Court shall estimate an appropriate reduction and deduct 90% of Plaintiffs' copy charges, reducing the NPP attorneys' request for copying charges from $18,981.99 to $1,898.20, and Mr. Pevar's request for copying charges from $4,618.00 to $461.80.

The Court has authority under Local Rule 54.1(c)(8) to allow other costs, and will allow the following costs based on that section because the costs are not otherwise specifically prohibited by more specific provisions of the local rule, and such costs are allowable as nontaxable expenses under Rule 54(d)(2).  Many of Plaintiffs' attorneys' extra expenses resulted from their out-of-state status.  Because Plaintiffs could not find Idaho counsel with expertise, time, or desire to take this non-frivolous civil rights case, the Court shall allow the other costs to which Defendants object, such as long-distance telephone calls, facsimile and Federal Express charges, postage, and travel expenses.  *See* Local Rule 54.1(c)8).

After deducting 90% of copying charges from the total costs requested,[17] the Court will award costs to the NPP attorneys in the amount of $9,047.58, and the sum of $7,085.70 for Mr. Pevar. Finally, the Court notes that Mr. Pevar asked for costs of $106.59 on behalf of Mr. Beladoff, but the Court will require Mr. Beladoff to address his own request for costs in his clarifying application.

## VI.

## REVIEW OF INTEREST ISSUE

Plaintiffs argue that Defendants should be ordered to pay interest on the fee award under 28 U.S.C. § 1961(a) from the date of February 12, 2002, until the fee award is paid. Defendants persuasively argue that § 1961(a) interest is allowed only on "money judgments." Here, no "money judgment" was entered in the case in 2002. Post-judgment interest begins to accrue on a judgment for attorneys fees on the date the fees were "meaningfully ascertained and included in a final appealable judgment." *See MidAmerica Federal Savings & Loan Assoc. v. Shearson/American Express, Inc.*, 962 F.2d 1470, 1476 (10th Cir. 1992); *Perkins v. Standard Oil Co. of Ca.*, 487 F.2d 672, 675 (9th Cir. 1973) ("claims for 'reasonable' attorneys' fees, being unliquidated until they are determined by a court, are not entitled to pre-judgment interest as would be certain liquidated claims").

---

[17] The NPP Attorneys requested total costs of $62,321,70. The Court deducts 90% of copying charges, $17,083.80, reducing the total to $45,237.90, and then calculates a final reduction of 80% to account for the limited success, to reach a result of $9,047.58. Mr. Pevar requested total costs of $39,584.70. The Court deducts 90% of copying charges, $4,156.20, reducing the total to $35,428.50, and then calculates a final reduction of 80%, to reach a result of $7,085.70.

MEMORANDUM DECISION AND ORDER RE: ATTORNEY'S FEES AND COSTS - 35

Accordingly, Plaintiffs' interest on their attorney's fees and costs award, and Defendants' interest on their costs award, shall begin to run from the date judgment for the award of attorney's fees is entered after the final fee requests are determined.

## VII.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

A.    Plaintiffs's Renewed Motion for Attorneys' Fees and Expenses (Docket No. 821) is GRANTED in part and DENIED in part.  Defendants shall pay the sum of $144,379.73 in attorney's fees to the National Prison Project attorneys and attorney Stephen Pevar for work performed on the retaliation claims.  Defendants shall pay the sum of $43,514.04 in attorney's fees to the National Prison Project attorneys and Stephen Pevar for work performed on the sanctions issue.

B.    Howard Beladoff's fees and costs application is temporarily DENIED without prejudice, and he is allowed to submit a new application as described herein above within thirty (30) days.

C.    Plaintiffs' Renewed Motion for Costs (Docket No. 827) is GRANTED in part and DENIED in part.  Defendants shall pay the sum of $9,047.58 in costs to the National Prison Project attorneys.  Defendants shall pay the sum of $7,085.70 in costs to Steven Pevar.

D.    Defendants' Second Renewed Motion to Allow Costs (Docket No. 826) is GRANTED in part and DENIED in part.  Plaintiffs owe the sum of $16,552.97 to Defendants as costs in the class action case.  Defendants may offset the their

MEMORANDUM DECISION AND ORDER RE: ATTORNEY'S FEES AND COSTS - 36

award of costs against Plaintiffs' award of fees as follows: 70% from NPP attorneys (5 lawyers), 15% from Stephen Pevar, and 15% from Howard Beladoff.

E.     Plaintiffs are entitled to request an additional award of attorney's fees for their work in preparing the attorney's fees and costs applications.  Plaintiffs' request shall be filed within thirty (30) days.  Defendants may file a brief response to the fee request within fourteen (14) days thereafter.  No reply shall be filed by Plantiffs.

F.     Plaintiffs' interest on their attorney's fees and costs award and Defendants' interest on their costs award shall begin to run from the date judgment for the award of attorney's fees is entered after the final fee requests are determined.

DATED:  **August 7, 2008**.

Honorable Larry M. Boyle
Chief U. S. Magistrate Judge

MEMORANDUM DECISION AND ORDER RE: ATTORNEY'S FEES AND COSTS - 37